THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LUTHER COBURN, a/k/a LUTHER J. COBURN, Defendant-Appellant.

(No. 58868;

First District (5th Division)—April 19, 1974.

BARRETT, J., took no part.

James J. Doherty, Public Defender, of Chicago (John Bogren, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM:

Defendant was indicted for the offenses of murder and aggravated battery. (Ill. Rev. Stat. 1971, ch. 38, pars. 9—1, 12—4.) A jury found him guilty of murder and not guilty of aggravated battery. He was sentenced to a term of from 50 to 150 years. On appeal defendant contends that (1) the trial court improperly denied his motion to suppress the preliminary hearing testimony of a deceased witness; (2) Supreme Court Rule 411 (Ill. Rev. Stat. 1971, ch. 110A, par. 411) is unconstitutional; and (3) the sentence is excessive.

Leslie Pippine testified for the State: At approximately 9:30 P.M. on December 20, 1971, he was in the Bus Stop Lounge, 505 West 79th Street in Chicago; he asked Edward Grant, the decedent, to lend him $30. Grant suggested they go to the washroom where they could talk. While they were in the washroom two persons entered, one of whom was named Philips and the other identified by the witness as defendant. Grant told Philips to leave and then turned to defendant and said, "That goes for you too, monkey." Pippine was within one to one and one-half feet of defendant. He got a good look at defendant's face for two or three minutes. The washroom was illuminated by an uncovered 60 watt light bulb. He and Grant left the washroom and walked to the end of the bar where he turned to Grant and remarked, "Man, you quit playing with them young punks like that." Defendant walked out of the washroom and, with his back toward Pippine, stood between Pippine and Grant and said to Grant, "Now what was that you said in the bathroom?" Grant remained silent and defendant pulled out a pistol, grabbed Grant, shoved the pistol in his stomach and fired four shots. Defendant then stepped around Grant's body and walked out the door. The bar near where Pippine was standing was illuminated by the light of a beer case and the lights on the wall.

Ms. Billie Jean Barnes testified for the State: She was in the Bus Stop Lounge at the time of the shooting; she was sitting about five to nine stools away from Grant and Pippine. During the few minutes she was at the bar she observed no other person than Grant and Pippine. While sitting at the bar she heard two shots go off and she dove behind the counter. Something went sweeping across her face and her glasses fell off. To the best of her recollection at no time could she remember seeing

anyone walk toward Grant and Pippine. She thought Pippine was the man who did the shooting because he was the only person she had seen with Grant. She was later called as a defense witness and testified that the lighting in the bar was poor; that it was dark where Grant and Pippine were standing, and that Joel Murphy was standing in the lighted part of the bar at the time of the shooting.

Thomas Ferry, an investigator for the Chicago Police Department, testified for the State: He entered the bar during the early morning hours of December 21, 1971. In the apartment on the second floor of the tavern he found a brownish plaid overcoat that had wet red stains on the front and sleeve. On cross-examination he testified that the lighting in the Bus Stop Lounge was poor. On redirect examination he testified that the lighting inside the washroom was good; that the lighting in front of the beer case was located at the south end of the bar about three to five feet from where "Mr. Pippine and Mr. Grant were situated."

Oscar Winston testified for the State: He was in the Bus Stop Lounge on the night of December 20, 1971; he heard some shooting and immediately hit the floor. When he looked up, he saw a man leaving the tavern with a gun in his hand. He was not able to identify the man, but he knew it was not Pippine because he had known him for two years.

The State offered into evidence the transcript of the preliminary hearing testimony of Joel Murphy who had died prior to trial. Defendant objected and made an offer of proof of a prior statement made to the police by Murphy and pointed out certain discrepancies between that statement and the testimony of Murphy at the preliminary hearing. At the preliminary hearing Murphy testified under oath and was cross-examined by defendant's attorney, the public defender, who also represented defendant at trial.

The transcript of Murphy's testimony at the preliminary hearing was admitted into evidence and it showed that Murphy, the owner of the Bus Stop Lounge, testified as follows: At approximately 9:25 P.M. he saw Grant and Pippine talking at the bar. After about five minutes, Grant and Pippine went into the washroom; after three or four minutes they came out of the washroom and seated themselves at the bar. Another man came out of the washroom and joined Grant and Pippine. He heard a shot fired and turned to see the three men standing at the bar. After turning, he heard two more shots after which he saw the man standing with Grant and Pippine turn, and with the gun in his hand walk out of the bar. Murphy was about 40 feet away at the time of the shooting, but, as the person who shot Grant left the bar, he passed within six feet of where he was standing. Murphy identified defendant as the man who shot Grant.

Defendant chose not to testify in his own behalf.

At the hearing in aggravation and mitigation, it was revealed that defendant had previously been convicted of resisting arrest, aggravated battery, unlawful possession of a shotgun, and five counts of robbery. In answer to a question by the court, defense counsel stated that defendant did not wish to say anything.

Defendant argues that Amendment VI of the United States Constitution guarantees an accused in a criminal prosecution the right to confront the witnesses against him, and that this confrontation clause was violated when the preliminary hearing testimony of the deceased Joel Murphy was introduced into evidence.

■■ The law is clear that the testimony of a witness at a preliminary hearing is admissible in evidence at the trial when the witness is unavailable. The general rule is stated in Wharton's Criminal Evidence, 13th ed. (1973), Vol. III, Sec. 650, pp. 371-374, as follows:

"As an exception to the hearsay evidence rule, *the testimony of a witness at a preliminary hearing* or former trial *may be allowed in evidence at a subsequent trial if a proper foundation has been laid, including a showing that the witness is no longer 'available.'* Whether a proper foundation has been laid is a question for the trial judge in his discretion to resolve, and his ruling will not be disturbed unless there has been a clear abuse of such discretion. This use of a former witness' testimony is not violative of the accused's constitutional right 'to be confronted with the witnesses against him' if, at the preliminary hearing of the former trial, the accused has been accorded an adequate opportunity to cross-examine such witness." [Emphasis added.]

The facts in the case at bar fall squarely within the foregoing rule of law. Here Murphy testified under oath at the preliminary hearing, was cross-examined by counsel for defendant and died prior to trial.

Defendant relies primarily upon *Barber v. Page*, 390 U.S. 719, where the court held that confrontation at a preliminary hearing cannot compensate for the absence of confrontation at trial because the nature and object of the two proceedings differ significantly. However, the court later discussed *Barber* in *California v. Green*, 399 U.S. 149, 166, stating:

"And in *Barber v. Page*, 390 U.S. 719, 725-726 (1968), although noting that the preliminary hearing is ordinarily a less searching exploration into the merits of a case than a trial, we recognized that 'there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be unavailable * * *.' In the present case

respondent's counsel does not appear to have been significantly limited in any way in the scope or nature of his cross-examination of witness Porter at the preliminary hearing. *If Porter had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing—the right to cross-examination then afforded provides substantial compliance with the purpose behind the confrontation requirement, as long as the declarent's inability to give live testimony is in no way the fault of the State.* Compare *Barber v. Page, supra* with *Motes v. United States,* 178 U.S. 458 (1900)." [Emphasis added.]

■■ We note that *Green* affirms the well established rule in this state concerning the admission of previously given testimony of deceased witnesses. (See e.g., Bergen v. People, 17 Ill. 426; *People v. Holman,* 313 Ill. 33, 144 N.E.313; *People v. Burton,* 6 Ill.App.3d 879, 286 N.E.2d 792, cert. denied 411 U.S. 937.) It is therefore clear that the court below did not err in permitting the preliminary hearing testimony of Joel Murphy to be introduced at trial.

Defendant next contends that Supreme Court Rule 411 is unconstitutional because as applied to the facts in the instant case it constitutes a denial of defendant's right to confront the witnesses against him. The rule provides that:

"These [discovery] rules shall be applied in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary. They shall become applicable following the indictment or information and shall not be operative prior to or in the course of any preliminary hearing."

■■ Defendant argues that the statements made by Murphy to the police prior to the preliminary hearing were not available to defendant prior to his cross-examination of Murphy at the preliminary hearing; that statements made by Murphy were inconsistent with his preliminary hearing testimony and also contradicted the testimony given at trial by another State witness; and that Murphy's prior inconsistent statements were discovered at trial and were preserved in defense counsel's offer of proof. However, an examination of the record fails to disclose that defendant made a motion for the production of Murphy's statement to the police prior to or at the time of the preliminary hearing. Further, the record does not disclose that defendant at any time prior to or during the preliminary hearing made a motion for discovery or that Rule 411 was unconstitutional. It is the rule that matters not raised in the trial court, even those presenting constitutional questions, cannot be raised

on appeal. (*People v. Long*, 39 Ill.2d 40, 233 N.E.2d 389.) We therefore find that defendant has waived his challenge to Rule 411.

██ Finally, defendant argues that the sentence of 50 to 150 years was excessive. A sentence imposed by the trial court, which sees defendant and is in a better position to appraise him and evaluate the likelihood of his rehabilitation than an appellate tribunal, should not be reduced unless there are substantial reasons for doing so. (*People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673; *People v. Kendricks*, 4 Ill.App.3d 1029, 283 N.E.2d 273.) In the instant case the defendant failed to present any mitigating circumstances tending to establish a likelihood of rehabilitation. There is no showing that the trial court abused its discretion in sentencing defendant to a term of not less than 50 nor more than 150 years and therefore the sentence is affirmed. (*People v. Moore*, 50 Ill.2d 24, 276 N.E.2d 319.)

For the foregoing reasons the judgment entered below is affirmed.

Judgment affirmed.

BARRETT, J., took no part.