THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW HOWARD, Defendant-Appellant.

(No. 60844;

First District (5th Division)—November 14, 1975.

Paul Bradley, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Kevin Sweeney, and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of the murder of William Young in violation of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 9—1) and was sentenced to 150 to 200 years in the penitentiary. On appeal, he contends that the trial court erred when it: (1) denied his motions to dismiss and to sever; (2) found that he had been proved guilty beyond a reasonable doubt; (3) restricted his cross-examination; (4) admitted evidence concerning the death of one of the witnesses; and (5) allowed the State to make improper remarks during opening and closing arguments.

Defendant was arrested for the murder of William "Pooky" Young on March 16, 1973. The trial court tolled defendant's 120-day term on July 3, 1973, on motion of defendant when his attorney, Sheldon Banks, failed to answer ready for trial. The case had been continued on motion of the State from June 26, 1973, to July 2, 1973. Banks was notified that the case would be continued until July 3 due to a death in the judge's family. Thereupon, on two separate occasions, Banks notified the State's Attorney's office that he could not be in court until 12:30 p.m. on July 3 due to pending matters in another court. At 10:45 a.m. on July 3, the trial court tolled defendant's term when Banks failed to answer ready for

trial. At noon, the judge again called the case, but Banks still had not appeared. There is nothing in the record to indicate that Banks ever did arrive in the courtroom that day. On September 17, 1973, defendant moved to dismiss the charge under the mandatory 120-day provision of section 103—5 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5.) The trial court denied that motion, and the case eventually went to trial on October 29, 1973.

At trial, the following evidence pertinent to this appeal was adduced.

For the State:

*William Fields*

He lives at 6815 South Union in Chicago. He heard a car stop in the alley behind his apartment at approximately 8:30 p.m. on February 26, 1973. The car pulled away after three or four shots were fired. He saw a body lying in the alley and called the police.

The pathologist's report, entered into evidence by stipulation of the parties, established that William Young had been shot six times in the head and once in the arm.

*Larry Leverston*

He was a member, along with defendant and codefendant Larry Hoover, of a street gang known as the Family. The top position in this gang was held by Hoover. On or about February 21, 1973, he was at a meeting along with ten or eleven other individuals, including defendant and Hoover when Hoover ordered the execution of William Young (also known as "Pooky") and Joshua Shaw for withholding money from the sale of drugs from the gang. At another meeting he attended on February 26, 1973, at approximately 10 p.m. Hoover stated that "they had gotten Pooky and threw him in the alley around 68th and Lowe and shot him in the head." Defendant pulled a gun from his holster and said "this is the way we take care of business." Defendant told him that they located Young around the Kennedy-King College campus, held him for a few hours, and then took him to an alley where they shot him in the head. On cross-examination, he admitted that he was currently charged with murder. The trial court sustained State's objections to defense questions on whether he had been indicted, whether he was incarcerated on other charges, and whether he would get favorable treatment for testifying for the State.

*James Hogan*

He is an investigator with the Chicago Police Department. He interviewed Joshua Shaw in the emergency room at St. Bernard's Hospital two days after the Young homicide. Shaw had been shot six times. Later, he returned to the hospital and took a statement from Shaw which placed defendant with Young at Kennedy-King College on the date of

Young's murder. He also interviewed defendant. Defendant first denied that he had seen Young on February 26. When confronted with Shaw's statement, defendant admitted bringing Young to the Roberts Motel on February 26, 1973, at Hoover's request, and then releasing him when Young said he did not want to see Hoover. He also took a statement from Hoover in which Hoover denied ever receiving a phone call from defendant on February 26, 1973.

*Anthony Salerno*

He is a Chicago police officer. On September 27, 1973, he responded to a police call and found the body of Joshua Shaw in an alley behind 6531 South Bishop. He felt no pulse or heartbeat. He "picked up Shaw's head, which was laying in a pool of blood." Over defense objections, he stated that he discovered two holes in the lower part of Shaw's neck which were the cause of Shaw's death.

*Edward Ptacek*

He is an attorney who was called to read the testimony of Joshua Shaw given at defendant's preliminary hearing. Shaw stated that he saw Young, the defendant, and another person named Rusty at 69th and Wentworth Avenue on February 16, 1973. Defendant was detaining Young when Shaw arrived, and then told Young to go away. Defendant changed his mind again and told Rusty, "You hold him here and if he runs, shoot him." During cross-examination at the preliminary hearing, defendant was not allowed to ask Shaw whether he had contacted the police about the incident or had offered Young any assistance.

During the closing argument, the State's Attorney referred to defendant as a "lieutenant" in the gang and stated that the Family's function was to "push narcotics" in the neighborhood.

OPINION

■■ Defendant first contends that the trial court erred when it denied his motions to dismiss and to sever. Section 103—5 of the Code of Criminal Procedure provides that a person in custody must be tried within 120 days from the date that he was taken into custody unless he occasions a delay. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5.) Defendant argues that the State's Attorney had a duty to inform the trial court that Banks could not appear in court until 12:30 p.m. on July 3. We believe, however, that it is defense counsel's duty to notify the court of any possible timing conflicts, not the State's Attorney's office. We cannot imagine what pending matter in another court could take precedence over a murder case scheduled to go to trial. Here, the trial court called the case twice; once, one hour and fifteen minutes after court normally

begins, and again at noon, and Banks still had not arrived. The Illinois Supreme Court has stated that where "* * * a continuance or delay in trial is occasioned because the counsel of an accused is engaged elsewhere, it is a delay properly charged to the accused." (*People v. Hairston*, 46 Ill.2d 348, 354, 263 N.E.2d 840, 845, *cert. denied*, 402 U.S. 972, 29 L.Ed.2d 136, 91 S.Ct. 1658.) Therefore, we hold that the trial court correctly denied defendant's motion to dismiss.

■■ Defendant also argues that the trial court erroneously denied his motion to sever his case from codefendant Hoover's case. He claims that the conflict between his statement and Hoover's statement as to whether he ever called Hoover to inform Hoover of Young's whereabouts denied him a fair hearing. The granting of a severance is within the discretion of the trial court. (*People v. Pulaski*, 15 Ill.2d 291, 155 N.E.2d 29, *cert. denied*, 359 U.S. 997, 3 L.Ed.2d 985, 79 S.Ct. 1134.) Defendant must show how he would have been prejudiced by a joint trial. (*People v. Rhodes*, 41 Ill.2d 494, 244 N.E.2d 145.) While Hoover may have been implicated by defendant's statement that he called Hoover, defendant was in no way prejudiced by Hoover's statement that he never talked to defendant on the night of the murder. The trial court did not abuse its discretion by denying defendant's motion to sever.

■■ Defendant next contends that he was not proved guilty beyond a reasonable doubt. He argues that the testimony of Larry Leverston did not place him at the meeting where Hoover ordered Young's murder and did not establish that there was a second meeting after the murder at which he admitted his complicity. It is the function of the jury to judge the credibility of the witnesses, weigh their testimony, and determine factual matters. (*People v. Robinson*, 3 Ill.App.3d 858, 279 N.E.2d 515.) In his testimony at the preliminary hearing Leverston did not specifically name defendant as one of the ten or eleven gang members present at the February 21 meeting. This was not inconsistent with his testimony at trial that defendant was present since he had not named all ten or eleven persons present in his earlier testimony. In addition, Leverston's statement to the police that he arrived at the motel at 8 o'clock, one-half hour before the killing, and heard defendant's account of the murder appears to have been a mistake originated by the policeman who took his statement, not by Leverston.

The fact that Joshua Shaw testified that defendant was with Young on February 16 not February 26 is initially a conflict for the jury to consider. Moreover, the jury could find that defendant's own admission to Officer Hogan that he was with Young on the 26th eliminated any confusion that was raised in Shaw's testimony.

■■ Defendant also contends that the trial court unduly restricted the cross-examination of Leverston. Defense counsel attempted to impeach Leverston by showing his past and pending criminal charges. It is well settled that the credibility of a witness can be impeached by convictions alone. (*People v. Hanks*, 17 Ill.App.3d 633, 307 N.E.2d 638.) The fact that a witness has been arrested or charged with a crime can be used to show bias. (*People v. Mason*, 28 Ill.2d 396, 192 N.E.2d 835.) Here, the trial court allowed defense counsel to show that a charge was pending, that Leverston had previously pled guilty to a robbery charge, and that he did not expect to receive any favorable treatment in return for his testimony. At that point, the court properly restricted further questioning unless a conviction could be shown. (See, *People v. Steel*, 52 Ill. 2d 442, 288 N.E.2d 355.) On redirect, Leverston further testified that neither the State's Attorney nor the Police Department made any promises to him regarding consideration for his testimony. Officer Hogan added that Leverston never asked for any leniency. We hold that all matters affecting Leverston's credibility were properly before the jury.

■■ Defendant next contends that the trial court erred when it allowed evidence regarding the death of Joshua Shaw. The hearsay rule does not bar prior recorded testimony from a preliminary hearing when the witness is unavailable at trial and the confrontation clause is substantially satisfied. (*California v. Green*, 399 U.S. 149, 26 L.Ed.2d 489, 90 S.Ct. 1930.) The State may show the death of a witness to satisfy the unavailability requirement. (*People v. Coburn*, 20 Ill.App.3d 60, 313 N.E.2d 270.) In the instant case, Officer Salerno's testimony that he "picked up Shaw's head, which was laying in a pool of blood" may border on the fine line between a proper and an improper foundation when viewed in the abstract, but when viewed in light of the entire record it is harmless error at worst. The State introduced no evidence that defendant was responsible for Shaw's death. Testimony at trial clearly showed that defendant was in jail when Shaw was killed. Therefore, any possible prejudice to defendant was adequately counterbalanced, and the trial court properly admitted testimony on Shaw's death.

■■ Defendant finally contends that he was prejudiced by improper remarks made during opening and closing arguments. There was no showing of bad faith by the State behind any remarks made during opening argument. Moreover, defense counsel was given ample opportunity to comment on any inconsistencies or lack of proof in the State's case in his own closing argument. References to gang membership and activity are not reversible error when they are based upon the record or inferences drawn from the evidence. (See *People v. DeSavieu*, 14 Ill.

App.3d 912, 303 N.E.2d 782.) Here, the murder arose directly from the drug sales which the Family was engaged in. Therefore, defendant's final contention cannot be upheld.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

BARRETT, P. J., and DRUCKER, J., concur.