THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM J. HORTON *et al.*, Defendants-Appellants.

First District (3rd Division) No. 61064

Opinion filed December 30, 1975.

James R. Streicker and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Richard Michael, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendants, William J. Horton and Ronald T. Reed, were each charged with armed robbery. After a jury trial in the circuit court of Cook County, both were found guilty of that crime. Horton was sentenced to 20 to 50 years; Reed received a sentence of 5 to 15 years. Both appeal.

At about 2:15 a.m. on September 9, 1972, the two defendants, while armed, obtained $190 from the cash register in a lounge located in Chicago and owned by Arner Raglan. In addition to defendants and Raglan,

Eugene Parker, Deborah Turner and Pauline Howard were present at the time of the occurrence.

Eugene Parker, a janitor at the lounge, testified for the State that he was cleaning up shortly after the 2 a.m. closing time. He observed Raglan and Horton walking closely together toward the washroom in the rear of the lounge. Parker picked up a beer bottle and approached the two in the washroom. Before reaching his destination, he was confronted by Reed, who threatened the janitor's life if he did not put the bottle down. Parker testified further that Reed led him into the washroom at gunpoint and then left. Horton held a gun on Raglan and demanded money. The two walked to the cash register and Parker heard Reed order a barmaid to open it. Parker came out of the washroom shortly before the police arrived. Reed gave the money from the cash register to Parker and threw the gun on the disc jockey's table. Raglan opened the door and let the police in. On cross-examination, Parker testified that he had noticed the defendants in the lounge earlier that evening.

Pauline Howard, a barmaid at the lounge, testified for the State that defendants had remained in the lounge after closing time and that Horton had approached Raglan at the front door. After a brief discussion the two men proceeded to the washroom. The barmaid then heard Reed threaten the janitor and observed those two also go toward the washroom. Phillip Ralston, the lounge's disc jockey, returned from obtaining some food and was allowed by Reed to enter. Soon thereafter, Ralston and the other barmaid asked to leave and Reed immediately unlocked the front door to let them out. Reed then joined Horton and Raglan at the cash register. Howard testified that she did not know if Reed was holding a gun in his hand at that time. Because this testimony surprised the prosecutor, Miss Howard was recalled as a court's witness. She then admitted to previously having stated that she had observed Reed holding a gun while at the cash register, but that now she was not certain.

Howard further testified that Raglan had her open the cash register and that Reed took money out at Horton's insistence. As Raglan and the two defendants were headed to the basement for more money, the police arrived. Horton told Raglan to send them away, but finally instructed Reed to let them in. Before their entry, Reed placed the two guns on the disc jockey's table and the money in the janitor's pocket.

Deborah Turner, another barmaid, testified for the State that Horton had a gun when he walked into the washroom with Raglan. She also testified to observing Reed with a gun when he grabbed Parker and took him to the washroom.

Phillip Ralston, the disc jockey, testified that he called the police after Reed had opened the door and had allowed Deborah Turner and him to leave the premises.

The next State's witness, Officer Phillip Handzel of the Chicago Police Department, testified that he and his partner had responded to a call of "men with guns" at approximately 2:15 a.m. The officer knocked on the door after observing the two armed defendants. Reed opened the door and two weapons were found on the disc jockey's table. Raglan informed the police that he had been taken to the washroom at gunpoint and had subsequently been robbed. On cross-examination, Handzel stated that Raglan had informed him that the offenders came to the lounge with the intention of making the owner pay for firing one of the waitresses.

The State next introduced, over defense objections, the prior recorded testimony of Raglan, taken at a preliminary hearing. Raglan had died prior to trial from causes unrelated to this case. Raglan's testimony recited that while closing up, he was accosted at gunpoint by Horton and marched to the washroom. Horton kept the .22 which he took from the owner's back pocket and gave his own .38 to Reed. Reed left and brought back Parker. Horton asked for money and mentioned his girl friend Alma Mays, a former barmaid. Horton then volunteered to leave Raglan's gun at a service station. Raglan opposed this suggestion, so Horton agreed to leave it unloaded in a corner of the building. Raglan and the two defendants then walked to the cash register where, Raglan testified, Reed placed a gun to his head and demanded money. After a barmaid opened the cash register, $190 was removed. Raglan had seen Horton in the lounge two or three times.

It was stipulated that Horton was 34 years old at the time of trial.

Defendant Ronald Reed was the sole witness for the defense. He testified that Horton and he went to the lounge with their girl friends at about 8 p.m. on September 8, 1972. Horton's date was Alma Mays. Raglan owed Alma Mays $250 in wages and agreed to give them the money if they returned at closing time. Defendants took their dates home and returned to the lounge after midnight. At closing time Horton and Raglan entered the washroom to talk. Raglan stated that he would not give them the money and attempted to draw his gun. Horton pulled his gun faster and took Raglan's gun and unloaded it. Horton then gave Reed his gun which he put in his trousers pocket. Reed denied having a gun prior to this time, but stated that he had taken a beer bottle from Parker earlier. Raglan agreed to pay the money and the three men went to the cash register. When the police arrived, Raglan told Reed, who was a 19-year-old minor, to hide the guns and money so that Raglan, as a tavern

owner, would not get in any trouble. Reed denied that he made any statement to a police officer.

The State produced one witness on rebuttal, Investigator Henry J. Leja of the Chicago Police Department. Officer Leja testified that Reed told him that during the aforementioned incident he had a gun which had been given to him by Horton, and that at Horton's request he had removed money from the cash register. On cross-examination, Leja stated that no one took notes concerning the statement, nor was anyone asked to transcribe it.

Defendants contend that they were not proved guilty of the crime of armed robbery beyond a reasonable doubt; that the trial court improperly allowed into evidence Raglan's preliminary hearing testimony; that the court improperly instructed the jury; and that certain comments of the prosecutor constituted reversible error.

■■ Defendants' initial contention is that the State failed to prove their guilt beyond a reasonable doubt. The Criminal Code defines robbery as the taking of "* * * property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1971, ch. 38, par. 18—1.) Defendants do not contest the fact that money was actually taken. Thus, it only remained for the State to show a threat or use of such force as to overcome the power of the owner to retain his property. (*People v. Hampton* (1969), 44 Ill.2d 41, 253 N.E.2d 385; *People v. Malone* (1970), 126 Ill.App.2d 265, 261 N.E.2d 776.) In the present case, the State met that burden. Horton entered the lounge in possession of a gun and disarmed the owner. Money was taken out of the cash register, and there was testimony that it was taken against the will of the owner. The evidence adduced was sufficient to prove defendants guilty of armed robbery.

Defendants next contend that the trial court erred in admitting into evidence Raglan's preliminary hearing testimony. As we have noted, Raglan died prior to trial of causes unrelated to this case.

■■ The issue concerning admissibility of the prior testimony of a deceased witness has recently been thoroughly discussed and ruled upon by this court. (*People v. Tennant* (1975), 32 Ill.App.3d 1034.) In that case, this court reiterated the well settled principle that the testimony of a witness at a preliminary hearing is admissible into evidence at trial when the witness is unavailable without fault on the part of the State and when ample opportunity to cross-examine had existed at the preliminary hearing. (See *People v. Beathea* (1974), 24 Ill.App.3d 460, 321 N.E.2d 458; *People v. Coburn* (1974), 20 Ill.App.3d 60, 313 N.E.2d 270; *California v. Green* (1970), 399 U.S. 149, 26 L.Ed.2d 489, 90 S.Ct. 1930.)

Defendants' counsel did in fact cross-examine Raglan extensively at the preliminary hearing. This case fits squarely within the bounds of *Tennant* and admission of the testimony into evidence was proper.

Defendants also maintain that the trial court committed reversible error when it instructed the jury that there was evidence that defendant Reed had confessed to committing the charged offense. The instruction complained of IPI—Criminal No. 3.07, reads as follows:

> "You have before you evidence that [a] defendant confessed that he committed the crime charged in the indictment. It is for you to determine [whether the defendant confessed, and, if so,] what weight should be given to the confession. In determining [what] weight is to be given to a confession, you should consider all of the circumstances under which it was made."

The foregoing instruction was accompanied by another instruction, IPI—Criminal No. 3.08, which states:

> "A confession [an admission] may not be considered by you against any defendant other than the one who made it."

The trial court proposed that the above instructions be submitted to the jury, and defendants' attorneys offered no objection.

■■ We commence our discussion of the issue by pointing out that the second instruction limited use of the "confession" to Reed and thereby effectively prevents Horton's claim that the giving of the instruction constituted error as to him. Horton could not have been prejudiced by the giving of the instruction.

As to Reed, Officer Leja testified in rebuttal that Reed gave an oral statement admitting to possession of a gun and to the taking of money. A confession must acknowledge all the elements of a crime and is a confession of guilt. (*People v. Georgev* (1967), 38 Ill.2d 165, 230 N.E.2d 851.) The element of the taking of property by force was lacking in Reed's statement. Therefore, the statement was an admission and should have been weighed accordingly by the jury. In its brief, the State did not contest that fact, and at oral argument expressly conceded that Reed's statement was merely an admission.

In Illinois, the law is that even where defendant has only a colorable claim of a defense, the characterization of a statement as a confession may discourage a jury from making a close analysis of what defendant actually said. (*People v. Sowell* (1965), 56 Ill.App.2d 110, 205 N.E.2d 487.) As such, it is reversible error to instruct a jury that defendant has confessed to a crime when he has made only an admission. (*People v. Sowell; People v. Sovetsky* (1926), 323 Ill. 133, 153 N.E. 615; *People v. Stapleton* (1921), 300 Ill. 471, 133 N.E. 224.) Thus if defendant Reed has not

waived objection to the instruction complained of, reversible error exists as to him.

The State maintains that defendant waived any objection to the instruction given by not raising an objection either during the trial when the instruction was proposed or after the trial in the form of a post-trial motion. An instruction which is not objected to at the trial court level ordinarily operates as a waiver of any such objection on appeal. (*People v. Mallett* (1970), 45 Ill.2d 388, 259 N.E.2d 241; *People v. Pickett* (1973), 54 Ill.2d 280, 296 N.E.2d 856.) However, a well-recognized *exception to* this general rule exists. Supreme Court Rule 451 provides that substantial defects are not waived by failure to make timely objections if the interests of justice so require. (*People v. Wicks* (1969), 115 Ill.App.2d 19, 252 N.E.2d 698; *People v. Robinson* (1974), 21 Ill.App.3d 343, 315 N.E.2d 95; also see *People v. Davis* (1966), 74 Ill.App.2d 450, 221 N.E.2d 63.) This rule places a dual burden on a defendant who in the reviewing court seeks to avoid a waiver for failure to make an objection. Defendant must establish that the defects in the instruction are substantial, and that the giving of the instruction resulted in a denial of a fair trial and justice. *People v. Knox* (1969), 116 Ill.App.2d 427, 252 N.E.2d 549; *People v. Price* (1968), 96 Ill.App.2d 86, 238 N.E.2d 881.

■■ As already pointed out, the defect in giving an instruction concerning a confession where only an admission exists is inherently substantial. The second part of the above test has also been satisfied by defendant Reed. While the State offered evidence that Reed actively participated in the armed robbery, Reed's testimony was exculpatory as to his participation in the crime. Additionally, State witnesses conceded that Reed permitted various persons to leave and enter the premises during the course of the robbery. The testimony adduced was subject to diverse interpretation. When the jurors retired to decide whether Reed took part in the armed robbery, they could easily have been swayed by a misbelief that he had confessed to the crime. The jurors accordingly might have been less than meticulous in analyzing the actual statements Reed made, and could attribute to them a weight disproportionate to their probative value. For these reasons, we reject the State's contention that objection to the instruction given was irrevocably waived. We determine that the instruction given as to a confession as it relates to Reed was reversible error. The proper instruction would have been IPI—Criminal No. 3.06 which would have correctly characterized the statements as an admission.

■■ Defendants finally contend that certain remarks made by the prosecutor during closing arguments constituted reversible error. They mention two specific instances. At one point, over defense objection, the prose-

cutor referred to Reed's "confession." This comment undoubtedly had a prejudicial effect on Reed in light of the subsequent instruction. However, in view of the limiting instruction, the comment regarding Reed's confession could not have been prejudicial to Horton.

■■ The prosecutor also commented upon the failure of Horton's girl friend to testify. We do not believe that this single comment, even if deemed improper, amounted to prejudicial error. See *People v. Williams* (1968), 40 Ill.2d 522, 240 N.E.2d 645.

For the reasons stated, the judgment of the circuit court of Cook County as to the conviction of William Horton is affirmed; the judgment as to the conviction of Ronald T. Reed is reversed and the cause is remanded for a new trial.

Affirmed in part; reversed and remanded in part.

DEMPSEY and MEJDA, JJ., concur.