THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE WEEKS, JR., Defendant-Appellant.

Second District (2nd Division)    No. 74-413

Opinion filed March 29, 1976.

Ralph Ruebner and Ira A. Moltz, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant George Weeks, Jr., was indicted by a Lake County grand jury for conspiracy to commit murder and attempt murder. He was found guilty of both charges by a jury, and he was sentenced to a term of 6 to 18 years for the conviction on the attempt murder charge. The conspiracy conviction was merged into the greater offense and no judgment or sentence was imposed on it. Defendant appeals his conviction and sentence on three grounds: that the court abused its discretion in failing to accept his negotiated plea of guilty, that he was deprived of a fair trial by the court's failure to properly instruct the jury, and that the minimum and maximum sentences imposed are excessive, with no extraordinary elements present to justify a higher than minimum sentence.

Dominic Mingarelli, the victim, was the State's first witness. He testified that he was at home playing cards with his wife on April 28, 1973, shortly before midnight, when there was a knock at the door. His wife went to the washroom, asking her husband to answer the door. He opened the front door and saw the defendant standing there, asking if Mingarelli's brother-in-law Bill Henry was at home. Mingarelli, only 18 inches from the defendant, at that point saw a gun in defendant's hand pointed at him and grabbed for the gun. A shot was fired and it went through the sleeve of the robe Mingarelli was wearing without striking his arm and leaving only a powder burn. Defendant turned and ran. Mingarelli told the police he recognized defendant, having seen him with his brother-in-law. He also testified that he and his wife had been separated prior to this incident, that she had previously run off with a Mr. Cummings, and that she left him immediately after this incident and he subsequently filed for divorce.

The victim's brother-in-law, William Henry, testified next for the State, having been granted immunity. He testified he'd seen defendant earlier that evening with Andrew Cummings. He saw defendant holding a knife and say, "I'm going to kill him," having said Mingarelli had killed his dog,

and that he was tired of Mingarelli making Cummings and Angel Mingarelli so unhappy. Defendant stated that he was going to see to it that Angel and her lover could be together. Henry asked defendant what he was on, referring to drugs, and defendant replied he'd only had a couple of beers. A little later Henry saw defendant and Cummings in a car outside his home (Henry lived in a mobile home attached to the home of his sister and brother-in-law, the Mingarellis). He got into the car and saw Cummings give defendant a gun and bullets. Cummings asked defendant if he needed any money, defendant said no, but Cummings gave him some anyway for traveling expenses. Henry next saw defendant the following day when defendant asked whether he'd killed Mingarelli. Henry said he hadn't even hit him, but he'd been recognized, and Henry didn't see defendant again until 3 months later in jail.

The State's final witness was David Schrimp, an F.B.I. agent. He testified that he'd taken a statement from defendant in Texas in July 1973. Defendant had told Schrimp he'd smoked one quarter pound of marijuana on April 28, 1973, and that Henry had given him 3 dosages of window pane LSD. He stated that while in a car talking with Henry and Cummings, Cummings gave defendant a loaded gun and told defendant he wanted him to shoot a man that night. Defendant knew only that the man's name was Nick and surmised it was because of an affair between Cummings and Nick's wife. Defendant was told to knock on the door near midnight, that Nick would answer the door, and that defendant was to shoot Nick. Defendant recalls seeing a man answer the door, firing one shot, and then walking away. Schrimp testified defendant told him that he never would have done the things he had done had he not been under the influence of LSD.

Defendant then testified in his own behalf. He stated that on April 28, 29 and 30, 1973, he had used window pane LSD, heroin, amphetamines, and marijuana. He testified that on the evening of the incident, Henry had given him three hits of window pane LSD, and that when he saw Henry the next day he didn't know whether or not he'd done anything. Henry told him he'd taken a shot at someone and had better get out of the area. He further testified he'd been using drugs for about 11 years, and that he was under the influence of marijuana when he gave his statement to F.B.I. Agent Schrimp. He testified he'd only known Cummings for 1 week prior to the incident and that Henry had told him Cummings and Angel Mingarelli were having an affair. Defendant testified he was hallucinating the night of the incident and the following morning.

Defendant's first contention of error is the failure of the judge to accept defendant's plea of guilty to the charge of conspiracy to commit murder. In return, the State would agree to *nolle prosse* the charge of attempt

murder, present no evidence in aggravation, and neither recommend nor oppose probation. The defense counsel's first statement to the court regarding the guilty plea was as follows:

"But I would like to this morning after discussing  present to the court a tentative by way of a negotiated plea though not a strict plea if there is no complete settlement of the case by the presentment of the plea."

The judge stated he didn't follow that and asked him to start again, at which point the defense counsel stated the above agreement adding that defendant would make a motion for probation and present in mitigation evidence of his drug habit "and then the court would make its decision whether or not the defendant would be a fit candidate for probation or such other program." The court then asked how far the attempt went, and upon being informed of the facts, stated "Counselor, I would never put a man like that on probation," and later, " *  *  *  you'd better get prepared for trial, gentlemen."

■■  The defendant contends that the court abused its discretion in failing to accept the guilty plea, that in so doing the court exceeded its function in plea bargaining by substituting its discretion for that of the State's Attorney. The law is clear in Illinois that sentencing is a judicial function, and it remains so in plea negotiations. Any agreements in plea negotiations are at most recommendations and the sentence to be imposed is for the court and the court alone. (*People v. Congleton*, 16 Ill. App. 3d 1003, 1006 (1974).) The record in this case is not as clear as it could be on whether the defendant was proposing a conditional plea. The defense counsel's first statement seems to indicate that the plea was only being offered upon the condition that the defendant receive probation or placement in a drug treatment facility; however, his later statement indicates only that he will make a motion for probation without saying that the plea is to be conditioned upon granting of probation. It appears the court understood the defense counsel to be conditioning the plea upon probation, and thus properly rejected the plea as invading the court's function of determining the severity of the sentence. The court's confusion was justified by defense counsel's failure to clarify the record. Defendant now contends no such conditional plea was intended; however, the proper time for him to clarify the record would have been when the court refused to accept the plea because he "couldn't put a man like that on probation"; when it became clear the court construed defendant's plea to be based on the granting of a certain sentence. The defendant's failure to at that point tell the court that it had misunderstood defendant's intentions, leads us to hold that the court did not abuse its discretion in finding this to be a situation where the court is not bound by agreement between

the defendant and the State's Attorney. See *People v. Williams*, 10 Ill. App. 3d 456, 458 (1973).

It is not necessary for us to reach the question of applicability of the foreign case cited by defendant, *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973), for we feel the court here acted well within the scope of established Illinois law and that there is no reason to consider a case where the court's refusal to accept a plea was based on different ground.

Defendant's second contention of error, that the jury was improperly instructed, is two pronged. Defendant's first assertion is that the court's characterization of the statement defendant gave to Schrimp as a confession rather than an admission was error and that defendant was prejudiced by the giving of IPI 3.07 (evidence that defendant confessed to the crime) rather than IPI 3.06 (evidence that defendant made an admission of fact relating to the crime). A confession acknowledges all the elements of the crime; an admission is a statement with evidentiary value in proof of an element of the offense. (*People v. Georgev*, 38 Ill. 2d 165, 175 (1967).) Defendant contends that his statement to Schrimp did not admit all the elements of the crime, rather, that because he said that he never would have done these things had he not been under the influence of LSD, there was a specific denial of intent, a necessary element to a murder charge.

■■ To give a statement the binding force of a confession, its distinctive feature must be an acknowledgement of guilt without any exculpating statement or explanation. A statement which admits the commission of the act charged but which also gives a *legal* justification or excuse, is not a confession. However, a statement by a defendant containing an admission of facts which together constitute proof of the commission of the crime charged has been deemed to be a confession even though additional facts are asserted in the statement by way of justification of the crime, *if the additional facts are insufficient as a matter of law to establish a defense.* (Emphasis supplied.) (29 Am. Jur. 2d *Evidence* §523 (1967); 23 C.J.S. *Criminal Law* §816b (1961); *People v. Rollins*, 119 Ill. App. 2d 116, 131-132; *People v. Green*, 30 Ill. App. 3d 1000, 1010; *People v. Ellis*, 31 Ill. App. 3d 666, 668.) We find that to be the situation in the instant case, that defendant's statement relating to the influence of drugs was insufficient, as a matter of law, to establish a defense. We therefore need not reach the question of whether the giving of IPI 3.07 was prejudicial error, as was recently held in *People v. Horton*, 35 Ill. App. 3d 208, 340 N.E.2d 700 (1st Dist. 1975), because we find that the court in the instant case properly characterized defendant's statement to have been a confession rather than an admission.

46

■■ The second prong of defendant's allegation that the jury was improperly instructed is defendant's contention that it was error that the court failed to give on its own motion IPI 25.02 ("Issues in Defense of * * * Drugged Condition"). Though the instruction was never tendered by either party, defendant cites Supreme Court Rule 451(c) (Ill. Rev. Stat., ch. 110A, §451(c)) that substantial defects (concerning instructions) are not waived by failure to make timely objections thereto. It has been held error to fail to instruct the jury on the elements of the crime (*People v. Davis*, 74 Ill. App. 2d 450 (1966)) or on reasonable doubt and presumption of innocence (*People v. French*, 5 Ill. App. 3d 908 (1972)) even if no such instructions are tendered. The defense cites *People v. Wright*, 24 Ill. App. 3d 536 (1974), in which the issues in murder instruction IPI 7.02 did not include the requirement that the State must prove beyond a reasonable doubt that defendant was not justified in using the force which he used. The court held this omission to be reversible error even though (a) no objection was made to 7.02 as given and (b) the jury was elsewhere separately instructed, by IPI 25.05, that the State had to prove that there was no justifiable use of force. The basis of this decision was that the directions as given were in direct conflict and in that manner there was a denial of fundamental fairness. However, these cases are distinguishable from the present case. There is no contention that the jury did not receive a complete issues in attempt murder instruction or presumption of innocence and reasonable doubt instruction. In the present case the jury was fully instructed in the issues in murder (including the element of intent) and also received an instruction on the criminal responsibility of a drugged person (24.02). We hold that when those instructions are given, it is not a substantial defect to fail to also give 25.02, "Issues in Defense of * * * Drugged Condition." Therefore the court did not err in failing to give IPI 25.02, as the court is under no duty to give instructions not requested by counsel when the omitted instruction is not a fundamental instruction which must be given in all cases (*People v. Doss*, 26 Ill. App. 3d 1, 14 (2d Dist. 1974); *People v. Springs*, 51 Ill. 2d 418, 425 (1972)).

Defendant's final argument is that both the minimum and maximum sentences imposed, 6-18 years, are excessive. Attempt murder is a Class I felony (Ill. Rev. Stat. 1973, ch. 38, §8—4). Under the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, §1005—8—1(c)(2)), the minimum term for a Class I felony shall be 4 years "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." The defendant asserts that the court's stated reasons for imposing the higher than minimum sentence were improper. Defendant contends the court was mistaken in its reliance on its characterization of defendant as a hired gun, and that the court improperly considered what the appellate courts or parole boards

would do to the sentence he imposed. There was uncontroverted testimony by Henry that defendant accepted in excess of $100 for traveling expenses from Cummings immediately before the shooting. In speaking on the record prior to imposing sentence the court expressed its opinion that, as the appellate court often reduces sentences, the final sentence in this case could be determined by the appellate court. But the court indicated that the actions of the appellate court and parole board carried no weight with him, and what he was concerned about was the seriousness of this crime and the manner in which it was committed.

■■ The court also specifically considered the fact that the defendant has had a serious drug problem for many years, but did not take advantage of the methadone program in which he was placed while he was in the Army. Defendant cites us to *People v. Walcher*, 42 Ill. 2d 159 (1969), in support of his contention that the fact of defendant's drug problem should have mitigated defendant's sentence. In that case the court recognized that the defendant's condition (in *Walcher*, chronic alcoholism) "is a circumstance to be considered in determining punishment" (42 Ill. 2d 159, 166). We think the court in the instant case, by considering the defendant's condition, followed the holding of *Walcher*; we do not feel *Walcher* mandates that a defendant's sentence be mitigated because he suffers from a condition such as alcoholism or drug addiction. Thus, contrary to defendant's contentions, we find that the court in imposing its sentence did comply with the requirements of section 5—8—1(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, §1005—8—1(c)(2)) in considering the circumstances of the offense and the history and character of the defendant, including his rehabilitative potential.

The defendant contends the Unified Code of Corrections requires the court to state the substantial extraordinary elements which justify a higher than minimum sentence, but cites no authority either by code section or case law. However, *People v. Taylor*, 25 Ill. App. 3d 396, 409 (1974), states:

> "We hold that there is no requirement that the trial judge make any specific statement as to the factors considered, but instead, each case must be determined on its own facts after a review of the record and proceedings involved."

In the instant case as noted above, there are sufficient facts in the record to justify the court's decision to impose a higher than minimum sentence. The minimum and maximum sentence imposed here are within the limits prescribed by the legislature. Even though the reviewing courts have the power to reduce sentences imposed by trial courts, it has been held that such power "should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of trial and the hearing in aggravation and mitigation to make a

sound determination concerning the punishment to be imposed than do the appellate tribunals." *People v. Taylor* 33 Ill. 2d 417, 424 (1965).

We therefore hold that the 6-18 year sentence imposed upon this defendant is not excessive, and is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.