THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ASBURY D. GRIFFIN, Defendant-Appellant.

First District (3rd Division)   No. 62472

Opinion filed April 13, 1977.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Paul Benjamin Linton, and John J. Murphy, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

A jury found Asbury Griffin guilty of murdering Mary Nesbary. Griffin contends: (1) the proof at trial did not establish his guilt beyond a reasonable doubt; (2) the time lapse between his arrest and preliminary hearing denied him a prompt preliminary hearing; (3) the delay between his arrest and trial violated his Illinois statutory and Federal constitutional guarantees of a speedy trial; (4) the admission of the preliminary hearing testimony of a witness who died before trial abridged his right to confront and cross-examine witnesses; and (5) the prosecuting attorney's statements during jury selection substantially prejudiced his chances of being tried fairly. We reject these contentions, and affirm the judgment.

The victim's nephew, Thurman Hall, who was 10 years old at the time of the murder, testified that he, Mary Nesbary, Griffin and Mary's ex-husband Willie Cowan, all lived in the same apartment. On the morning of Mary's death, he overheard a conversation between Griffin and Mary in which she said Griffin would have to move out of the apartment. When Thurman Hall returned from school that afternoon, he found the glass in the front door to the apartment broken and discovered the victim's body on the bed in Griffin's room.

James Monroe, a long-time friend of Griffin, testified that the day after Mary Nesbary's murder, Griffin came to his apartment and told him that he had beaten a girl named Mary, stabbed her 11 times and killed her, and that he was leaving Chicago because he might be in bad trouble. Monroe also testified he did not believe Griffin.

Griffin was apprehended in West Memphis, Arkansas, approximately 2 months after the murder. A Chicago police officer who accompanied Griffin to Chicago testified that Griffin told him he found Mary's naked body lying face up in bed with a butcher knife in her chest, but denied killing her. The officer also testified Griffin said he panicked and left the apartment, taking his clothes with him. Before leaving the apartment he wrote the words, "No good, even for children," on a brown paper bag which he placed on the victim's thighs. Two police officers who were at the murder scene shortly after the body was discovered by Thurman Hall

testified that the apartment had not been ransacked, and that no lamps or furniture had been overturned. Cowan testified he left the apartment early on the morning of the murder and returned after the body was found. He testified that he paid rent to Mary and denied that, shortly before her death, either Mary told him to move out of the apartment, or that they had an argument.

In his testimony, Griffin denied that he argued with Mary Nesbary or that she told him he would have to move out. He testified she argued frequently with Cowan, and shortly prior to her death told Cowan to move out because he was behind in his rent. According to Griffin's testimony, Mary received a phone call early the morning of the murder, slammed down the receiver and appeared to be angry. When he returned to the apartment that afternoon to meet Mary, he rang the doorbell and received no response. As he looked through a window, he observed that the bed in Cowan's room was knocked out of place, the bedclothing was on the floor and chairs were turned over. As Griffin entered the apartment by kicking out the window in the door with his foot, he cut his leg and hand. He went into the room where he slept and discovered Mary's body lying in bed on its back with a knife in its chest. He admitted writing "No good, even for children" on a brown paper bag he saw on the floor and placing it on the body.

After leaving the murder scene he went to a hospital to have the cuts on his leg and hand treated. He admitted telling police at the hospital that he had been stabbed at an intersection several miles from Mary's apartment. He did not tell the police at the hospital about Mary Nesbary. Griffin testified he neither killed Mary Nesbary nor told Monroe that he stabbed, beat or killed her. He admitted going to Monroe's apartment the morning after the murder and using a false name when arrested in West Memphis. Griffin failed to explain why he wrote the note and placed it on the victim's body. He also testified that he and Mary Nesbary were intimate friends and lovers.

Griffin was incriminated by Thurman Hall's testimony of a disagreement between the victim and Griffin the morning of the murder and by his admissions to James Monroe. He also was incriminated by Cowan's refutation of Griffin's testimony about a feud between Cowan and Mary Nesbary and by the direct contradiction between his and the police officers' testimony as to whether the apartment was in disarray after the murder. Further, Griffin's actions after he found his lover's dead body—failing to inform the police of her death, fleeing the city and giving a false name when apprehended—were not those of an innocent man. Nor were his false statements to the police at the hospital regarding how and where his leg and hand were cut. Finally, Griffin never explained why he left the incriminating note on the victim's body.

■■ It was the jury's responsibility to decide the question of Griffin's guilt. A jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt; it is sufficient if all the evidence, taken together, satisfies a jury beyond a reasonable doubt of the accused's guilt. (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590.) Our view of the evidence is that it was sufficient for the jury to find guilt beyond a reasonable doubt.

■■ Griffin was extradited to Chicago on January 18, 1973. Although it is unclear whether he arrived in Chicago on that day or on the next, he was in custody in Chicago on January 19, 1973. His preliminary hearing was set for January 26, but on that date, he moved for a postponement. The hearing then took place on February 14. Thus, the longest delay that could be attributed to the State was the 8-day period commencing January 19. It is unnecessary to decide whether the 8-day delay was inconsistent with Griffin's constitutional right (Ill. Const. 1970, art. I, § 7) to a prompt preliminary hearing to determine probable cause. Illinois lacks a statute providing a sanction for violation of this constitutional guarantee. In the absence of such a statute, it has been held that dismissal of an indictment or reversal of a conviction is not appropriate even in instances where a preliminary hearing to determine probable cause has been unreasonably delayed. *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403; *People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724.

Griffin was in custody for more than 17 months before his trial began. In this case, however, the delay violated neither section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) nor the Sixth Amendment to the United States Constitution.

The State statutory guarantee to a speedy trial requires that a defendant be brought to trial within 120 days of the last delay he causes. The crux of Griffin's argument is that if the delay between January 28, 1974, and February 26, 1974, was not attributable to him, he was held from December 20, 1973, until the start of the trial, nearly 6 months after the last delay occasioned by him.

■■ A defendant who requests or agrees to a continuance which delays his trial is responsible for that delay. (*People v. Gooding* (1975), 61 Ill. 2d 298, 335 N.E.2d 769.) On January 28, Griffin's attorney told the court he needed a continuance because he had a sentencing in Waukegan and a matter in Skokie scheduled for the next 2 days. He acquiesced to the court's statement that the continuance to February 26 was "by agreement," and understood that agreeing to the continuance constituted a withdrawal of his client's demand for trial. Griffin contends that his counsel agreed to the continuance on January 26 only on the condition that the court guarantee that his trial would commence on February 26, which would have been within the 120-day period. However, an

examination of the colloquy on January 26 reveals that the defense counsel was requesting a continuance because of his own commitments in other cases. Since Griffin, through his attorney, was responsible for the continuance granted on January 26, his trial commenced within 120 days of the last delay he caused. His statutory right to a speedy trial was not violated.

■■ Neither was his right to a speedy trial under the Federal Constitution. The Illinois Supreme Court has ruled that as long as a defendant is tried within 120 days of his demand for trial, he has not been deprived of his Sixth Amendment right to a speedy trial, except in cases involving arbitrary, unreasonable and oppressive delays. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.) During the 7 months immediately following his arrest, Griffin was wholly or partially responsible for continuances delaying trial more than 6 months. Griffin then demanded trial for the first time and the State was granted two continuances totaling 1½ months. Griffin agreed to additional continuances consuming about 2½ months and delaying trial until December 20, 1973, when he again demanded trial, and the State was given a continuance to January 28. As we already have determined, Griffin was responsible for the continuance granted on that date, and then was tried within 120 days of the last delay for which he was responsible. Under these circumstances, where the lengthy delay between arrest and trial was attributable in large part to motions made, or continuances assented to, by the defendant, there was no violation of his Federal constitutional right. *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306.

James Monroe, who died 1 month before the trial began, testified at the preliminary hearing. Griffin's attorney was present when Monroe was questioned by the prosecution and was permitted to cross-examine Monroe fully and without interruption. At trial, before any evidence was presented to the jury, the court studied a transcript of Monroe's preliminary-hearing testimony, and after examining it with prosecution and defense counsel deleted portions which Griffin's attorney claimed were prejudicial. One of the prosecutors called and sworn as a witness for the State read the edited version of the direct and cross-examination testimony from the transcript. This procedure was twice explained to the jury.

■■ The supreme court has decided in two recent cases that where there is an adequate opportunity for cross-examination at the preliminary hearing, the testimony of a witness who dies prior to trial is properly admitted at trial. (*People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121; *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116; see also *People v. Coburn* (1974), 20 Ill. App. 3d 60, 313 N.E.2d 270.) Here, Griffin was given a full opportunity to confront and cross-examine Monroe at the

preliminary hearing. Although Griffin argues the cross-examination was inadequate because Monroe's statement to the police was not available to his attorney at the preliminary hearing, Griffin does not show how the statement would have changed either the cross-examination or Monroe's testimony. No constitutional violation stemmed from the admission of Monroe's testimony at trial.

Finally, Griffin alleges three instances during jury selection where the prosecutor's remarks prejudiced his chances of receiving a fair trial. Although the prosecutor's statements were improper, the impropriety was not error requiring reversal.

■■ The prosecutor's first improper remarks to a prospective juror were ambiguous, but implied that Griffin would take the witness stand. Griffin's attorney failed to object to the alleged misstatement when it was made. During the trial, the defense counsel, judge and prosecutor each correctly outlined Griffin's Fifth Amendment rights. And, most important, Griffin did testify, and had virtually no chance of being acquitted unless he testified in his own behalf.

■■ The second error Griffin complains of is the prosecutor's attempt to explain the concept of reasonable doubt. In *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, the court emphasized that trying to define that term is an exercise in futility and admonished attorneys to refrain from doing so. However, our examination of the record here reveals that, as in *Edwards*, no prejudice resulted. Griffin's attorney promptly objected to the prosecutor's remarks and the trial judge properly sustained those objections.

■■ The third error Griffin alleges is that the prosecuting attorney discussed matters of law with the jurors. When the prosecutor told a prospective juror that he had talked with witnesses and asked the prospective juror if he thought attorneys should have the right to speak with witnesses, the prosecutor ventured into a realm from which attorneys are exluded. But the State cannot reasonably be charged with having significantly harmed Griffin by these remarks. The prosecutor's improper foray into a matter of law was quickly rebuffed when Griffin's attorney objected to the prosecutor's comments and the trial judge directed him not to go into matters of law with prospective jurors. Whatever error occurred was harmless and quickly cured.

Judgment affirmed.

McNAMARA and JIGANTI, JJ., concur.