(No. 38681.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROBERT HALL, Appellant.

*Opinion filed November 30, 1967.*

W<small>ARD</small>, J., took no part.

J<small>OSEPH</small> H. T<small>AYLOR</small>, J<small>R</small>., of Chicago, appointed by the court, for appellant.

W<small>ILLIAM</small> G. C<small>LARK</small>, Attorney General, of Springfield, and J<small>OHN</small> J. S<small>TAMOS</small>, State's Attorney, of Chicago, (F<small>RED</small> G. L<small>EACH</small>, Assistant Attorney General, and E<small>LMER</small> C. K<small>IS</small>-<small>SANE</small> and J<small>AMES</small> B. Z<small>AGEL</small>, Assistant State's Attorneys, of counsel,) for the People.

Mr. J<small>USTICE</small> K<small>LUCZYNSKI</small> delivered the opinion of the court:

Defendant, Robert Hall, prosecutes this direct appeal from his 1962 conviction in the circuit court of Cook County for armed robbery. He alleges that the trial court erred in

admitting his confession, since it was involuntary, and certain testimony and exhibits, since they were irrelevant, and that the evidence was insufficient to sustain his conviction.

From the record the evidence shows that at about 11:00 P.M. on February 1, 1962, Willie Evans, Joey Dear and Uwles Robinson, by ruse, entered the home of Irving Chanenson. The intruders, one carrying a shotgun and the others brandishing pistols, herded the family into the living room and took the contents of two money bags constituting the day's receipts of Chanenson's business which amounted to $466. Evans then said that no one was to leave until 4:30 A.M. and to take it easy because it is "an extortion and kidnapping." He stated that they would abduct Chanenson's wife and children and keep them until a ransom of $40,000 was paid. At that time Chanenson displayed his bank book and stated that he would have a hard time writing a check for $5000 and having it clear. At 4:30, the wife and children were taken by two of the abductors and Evans remained until 5:00 o'clock. He left saying he would call later by phone. Chanenson then contacted his brother and requested that he notify the Federal Bureau of Investigation.

Later that morning, Chanenson went to the Steel City National Bank and obtained $4600 in currency, made up of $100, $50 and $20 bills, which money was marked and the serial numbers recorded by the F.B.I. Upon returning home, he received a telephone call from Willie Evans instructing him to proceed to a particular address with the money. Following the instructions, Chanenson went to the rendezvous point, gave the money to Evans and returned home. Subsequently, he received another phone call from Evans who gave him the address of an apartment where his family could be found. In the meantime, the Chanenson family had escaped and went to Chanenson's place of business.

Defendant, a former employee of a store operated by

Chanenson, was arrested at about 7:30 P.M. on February 4, 1962, and taken to the police station with his half brother, James Clark, where he was questioned concerning the robbery and kidnapping. Defendant alleges that he was beaten intermittently during the course of this interrogation by the police officers. At about 11:30 P.M., he was confronted by Larry Guyton, an acquaintance, who related that on February 2, 1962, he was present when defendant, accompanied by his common-law wife, Rose Riley, bought a car with $300. Included in this amount was a $100 bill. After this confrontation, defendant orally admitted planning the robbery with Willie Evans and gave the telephone numbers of two of the men involved in the robbery whose addresses were then obtained. At one address a search revealed a Steel City Bank money bag, a .38 caliber revolver and a shotgun. At the other, the apartment of Willie Evans, $380 of the ransom money was found.

The next morning, at about 11:30, defendant gave a statement to the assistant State's Attorney, consisting of questions and answers, which was reduced to writing, read to the defendant and signed by him later that day.

Meanwhile, Dear, Evans and Robinson had been apprehended and were placed in a line-up with defendant at about 4:00 P.M. that day. Chanenson identified them as the men who had invaded his home and the defendant as a former employee. Defendant then verbally admitted pointing out the Chanenson residence to Evans as the target for the criminal venture.

At trial, defendant moved to suppress his written confession alleging that it was made involuntarily as a result of physical coercion. Hearing was had thereon and defendant's testimony that he was beaten by police was supported by the testimony of the two witnesses, James Clark and Rose Riley. Clark testified that he accompanied defendant to the police station and was detained in the same room with him until 11:00 P.M. when he, Clark, was taken into

another room. Clark stated that he next saw his brother about an hour later and at this time defendant had "his false teeth out" and his lip was swollen and bleeding. Rose Riley testified that she saw defendant and similarly described his physical appearance.

In rebuttal, 22 police officers, including all but one of the officers, Lt. Sheehy, whom defendant claimed struck him, testified that they did not physically abuse or otherwise intimidate the defendant nor did anyone else do so in their presence. The absence of Lt. Sheehy was explained by testimony of an officer who said he had visited Sheehy a day previous to the hearing at an out-of-state hospital where he (Sheehy) was confined as a patient. Larry Guyton testified that he saw defendant in the police station between 11:00 and 12:00 P.M. on February 4, 1962, and that he did not then observe any blood on defendant or any swelling of his face, directly contradicting defendant's claim of being abused and beaten. The court ruled the confession admissible.

At trial the prosecution introduced the confession wherein defendant admitted planning the robbery, selecting the site, the Chanenson home as opposed to their store, and singling it out to Evans who was to supply "the artillery". He further admitted that he met with Evans after the robbery and received $300 which he immediately spent on clothes and a new car.

State's witnesses, Mr. and Mrs. Chanenson, described the robbery and, over objection, the kidnapping. A police officer testified to defendant's oral confession, to the search of the apartment that contained the firearms and money bag in reliance on a telephone number given by defendant, to apprehension of Willie Evans through a second phone number given by defendant, to the arrest of Joey Dear through information given by Evans, and to defendant's admission of participation in the crime made in the presence of the Chanensons at the line-up. In addition, Larry Guyton testi-

fied that he took defendant to buy a car the day after the crime and repeated his statements made at the earlier hearing concerning the defendant's physical condition the night of his arrest. The prosecution then introduced the weapons found in the apartment, the marked money taken from the persons of Evans, Dear and Robinson, the list of serial numbers of the ransom money, and a photograph of the apartment where the kidnap victims were detained.

Defendant testified in his own behalf, stating that the arresting officers refused to tell him why he was arrested, that he was beaten by certain policemen while being interrogated, that he did orally confess to the robbery out of fear of additional beatings, but that such confession was "a lie" since he did not participate in the crime, and that he requested to see a lawyer before signing his written confession but was not permitted to do so. Rose Riley also testified on his behalf repeating, in substance, her testimony at the hearing on the motion to suppress.

The jury found the defendant guilty and the court, in light of his two prior felony convictions, imposed a sentence of not less than fifteen nor more than thirty years in the penitentiary.

On appeal, defendant advances a two-fold argument with respect to the voluntariness of his confession. In addition to the alleged specific acts of coercion (the beatings), he claims that the circumstances surrounding his confession were, by themselves, sufficiently coercive as to render it involuntary. In this regard, he alleges that before signing the confession he had been held and questioned for 24 hours without being allowed to sleep, to consult with counsel or appear before a magistrate.

These factual contentions must be considered in light of the general rule that the trial court's finding of voluntariness will not be disturbed on review unless manifestly against the weight of evidence, or unless the trial court has committed an abuse of discretion. (*People* v. *Hart-*

*graves,* 31 Ill.2d 375; *People* v. *Spencer,* 27 Ill.2d 320.) Since defendant did not allege at the preliminary hearing that he was denied sleep, the record does not reveal any facts pertinent to a determination of the truth or falsity of this charge. It does disclose that he was held without benefit of counsel or judicial hearing for approximately 24 hours before signing the confession. But it also discloses that he orally confessed to the crime after only an hour and a half of questioning, that he was fed three times and left alone for substantial lengths of time during the 24-hour period, and that he was warned by the State's Attorney prior to making his written confession that whatever he said could be used against him. Since the standards laid down in *Escobedo,* 378 U.S. 478, 12 L. Ed. 2d 977, and *Miranda,* 384 U.S. 436, 16 L. Ed. 2d 694, were not applicable to defendant (*People* v. *McGuire,* 35 Ill.2d 219), the failure to provide him with counsel or immediately advise him of his rights were only attendant circumstances to be considered in determining the voluntariness of his confession. (See *People* v. *Kees,* 32 Ill.2d 299.) The trial court considered these and the other attendant circumstances, along with the evidence adduced concerning defendant's alleged physical beatings, consisting of the defendant's testimony, supported by the testimony of his half brother and common-law wife, and the contradictory testimony of the police officers and two disinterested witnesses. The trial court found the confession was voluntary and, in view of all the evidence, particularly the questionable credibility of defendant's corroborating witnesses' testimony, we are not constrained to disturb this finding. Nor is it invalidated by the failure of one of the officers alleged to have beaten defendant to testify since his absence was adequately accounted for. (See *People* v. *Dale,* 20 Ill.2d 532.) The confession was properly held admissible.

Defendant next contends that the trial court erred in admitting certain testimony and exhibits since they were un-

related to his prosecution for armed robbery. Specifically, he complains of those parts of the Chanensons' testimony and of his own confession, and those exhibits, *viz:* the weapons and marked money, the serial numbers thereof and the photograph, which refer to the kidnapping.

It is undisputable that all the above evidence is connected by the other evidence in the case, especially the defendant's confession, with the events that occurred on the night in question at the Chanenson home and immediately thereafter. Defendant seeks to overturn the admissibility of this evidence by invoking the general rule precluding admission of evidence showing that the accused committed an offense other than the one charged (in this case kidnapping). (See *People* v. *Deal,* 357 Ill. 634.) However, such evidence is admissible where it tends to establish the crime for which defendant is being tried (*People* v. *Mangano,* 375 Ill. 72), so long as it meets the same test of relevancy and materiality to the issues as other evidence. *People* v. *Watkins,* 309 Ill. 318, 322.

In our view, the armed robbery and kidnapping were not two independent and distinct crimes but rather one continuous criminal transaction flowing from the initial unlawful act entered into by defendant. As such, evidence referring to the circumstances surrounding the kidnapping necessarily has relevance to the issue of guilt on the robbery charge and was admissible to show the extent of the unlawful act entered into by defendant. (See *People* v. *Davis,* 14 Ill.2d 196, 200.) Moreover, the majority of physical evidence complained of was obtained as a result of leads furnished by defendant in his confession and was, therefore, admissible on the basis of corroborating that confession.

Defendant finally contends that "there was an insufficiency of evidence" to sustain his conviction for armed robbery.

It is not essential that participation of defendant in

each element of robbery be established in a robbery prosecution; it is sufficient to show that he aided, abetted, or assisted his companions in commission of the robbery. (*People* v. *Cole,* 30 Ill.2d 375.) "Stated differently, circumstances may show there is a common design to do an unlawful act to which all assent, and whatever is done in furtherance of the design is the act of all, making each person guilty of the crime. [Citations]." (30 Ill.2d at 379.) See S.H.A. chap. 38, pars. 5—1 and 5—2.

Here, there is substantial evidence to show that defendant planned the robbery, singled out the victim, and shared in the proceeds. Such acts constitute sufficient participation in the robbery to make defendant criminally liable therefor; thus, the jury's finding of guilt is affirmed. *People* v. *Prohaska,* 8 Ill.2d 579, 589-90.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.