**People of the State of Illinois, Plaintiff-Appellee v. Melvin Daniels, Defendant-Appellant.**

**Gen. No. 51,963.**

First District, First Division.

February 19, 1968.

Floyd N. Nadler, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver D. Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Melvin Daniels, the defendant here, and one George Sims were indicted for murder. Represented by private counsel, Daniels moved for a severance, which was granted. He was found guilty in a bench trial, however, the trial judge granted defendant a new trial. A Chicago Bar Association lawyer was appointed to represent defendant in the second trial, where he was again found guilty by a second judge sitting without a jury. Daniels was sentenced to not less than fifty, nor more than fifty-five years in the penitentiary. Defendant's brief raises the following points on appeal:

(1) Error in admitting into evidence the declaration of a codefendant;

(2) Error in admitting into evidence testimony of Florence Davis, such testimony being hearsay;

(3) That the State did not prove its cause beyond a reasonable doubt; and

(4) That the trial court erred in expecting defendant to assume the burden of proof and prove his innocence beyond a reasonable doubt.

George Lemon, the deceased, was a special employee of the Chicago Police Division of Narcotic Control. Lemon participated in a controlled purchase of narcotics from Daniels and that transaction was the basis of an indictment charging Daniels with unlawful sale of narcotics. The trial of the narcotics case was set for February 28, 1961, at which time Lemon was to appear and testify against Daniels.

One of the State's witnesses was Clarence Murphy. He testified that he met Lemon very late on Sunday evening, February 26, 1961. Together they went to the apartment building where defendant lived and Murphy went upstairs to get defendant. Murphy, Lemon, one Howard Sims, and defendant, then went to a restaurant for a bite to eat. This was about 12:30 a. m. on Monday. Sims, Lemon and defendant went into the restaurant while Murphy remained in the car. After eating, the four men drove back to defendant's apartment. Sims and defendant went upstairs and returned five or ten minutes later. The four men drove off again. Murphy got out of the car about one block away from the apartment. Sims, Lemon and defendant proceeded on.

Sims, who later testified for the State, and defendant, who testified on his own behalf, confirmed Murphy's testimony with respect to going to get something to eat shortly after midnight on February 27, 1961. Sims corroborated Murphy's story that the foursome returned to defendant's apartment. Sims and defendant went up-

stairs and returned and then dropped Murphy off about one block from the apartment.

Sims further testified that when he and defendant returned to the apartment, defendant gave him a .32 caliber pistol. After dropping Murphy off, the remaining threesome drove on. They stopped at a place called the Silver Dollar. Lemon and defendant went inside and upon returning about 25 minutes later, Lemon was eating popcorn. The two got back into the car and Sims started driving again. Defendant put a gun to Lemon's head and ordered Sims to keep driving. When the group reached Evergreen Park, defendant and Lemon got out of the car and walked away. Sims heard three or four shots. Defendant returned to the car without Lemon and Sims drove back to the apartment. Upon returning to the apartment, Sims told one Florence Davis what had happened. Defendant, meanwhile, dismantled the gun and wrapped it in a scarf. Sims and defendant went out again and disposed of the gun by throwing it off a bridge into the river at 31st and Western.

Lemon's body was found by the Evergreen Park Police at about 6:00 a. m., on February 27, 1961. In an investigation of the area where the body was found, the officer found four discharged casings of bullets from a .32 caliber gun. In Lemon's clutched hand, the police found an empty popcorn bag. The police had been notified by a newspaper delivery boy, who while on his morning route, found the body. A resident of that neighborhood testified that he had heard some shots at about 3:00 a. m.

Florence Davis lived in the same building as defendant. She saw defendant and Sims together at the apartment building late Sunday night, February 26, 1961, and testified that they left the building about 12:00 a. m., Monday. About an hour and a half later, they returned. Defendant and Sims were there for about 15 minutes. During this short period of time, Miss Davis had the

first of two conversations with Sims. The admission of the contents of the coversation into evidence, defendant charges, was error. According to Florence Davis, Sims told her that he and defendant were "getting ready to go off George Lemon." "Off" is slang for the word kill. She then saw defendant remove a gun from a drawer and leave with Sims.

At about 5:00 a. m., on the same morning, Sims and defendant returned to the apartment. Sims had the second conversation with Miss Davis which was also admitted into evidence. Miss Davis testified that Sims told her that he and defendant "had just killed, took George Lemon and killed him." Sims also told her they were going back out to dispose of the gun. Sims wrapped it up in a rag of some sort and the two men then left the apartment.

Defendant testified on his own behalf. He admitted that he was with Sims, Murphy, and Lemon during the early morning hours of February 27, 1961, and that the group went to a restaurant for something to eat. Murphy left the group about one block from defendant's apartment; Lemon asked to be driven to the Silver Dollar where he left the group; Sims asked to be dropped off at 55th and Wentworth and defendant obliged him. Defendant then returned to his apartment. He denied Sims' account of the evening's events.

With respect to defendant's argument that the State did not prove its case beyond a reasonable doubt, he argues that the sole evidence implicating him to the murder was the contradictory testimony of Howard Sims. The testimony of Florence Davis is also attacked as being inconsistent and that she was impeached by her own mother.

Defendant cites the case of People v. Zaeske, 67 Ill App 2d 115, 213 NE2d 577 (1966), for the proposition that Sims' testimony alone is insufficient to convict, because Sims was expecting to be rewarded for turning State's

evidence. (The charge of murder against Sims was nolle prossed.) In Zaeske the court states that testimony of an accomplice may be sufficient to convict if "it carries with it absolute conviction of the truth."

Disregarding for the moment the testimony as to Sims' statements of the plans to kill George Lemon, there is ample evidence to corroborate Sims' story. Florence Davis testified that defendant left his apartment with Sims shortly after midnight. Clarence Murphy corroborated this testimony as to time and testified that he, together with Sims, George Lemon and defendant, went to a restaurant. Defendant himself admits this aspect of the case. Murphy further testified that Sims and defendant returned to the apartment. Florence Davis stated that when defendant returned to the apartment it was about 1:30 a. m. She observed defendant taking a gun and leaving the apartment. Murphy testified that Sims and defendant drove off with George Lemon.

Sims' testimony that Lemon stopped to get some popcorn is corroborated by the fact that an empty popcorn bag was found in the deceased's hand. Sims also testified that he heard 3 or 4 shots and the police found four expended shell casings at the scene of the murder. The time of the murder was placed at about 3:00 a. m., and this corresponds with the passage of time as revealed by the testimony of Sims.

After defendant returned to his apartment, Florence Davis observed him dismantling a gun and then leaving with it wrapped up in a rag.

█ Upon reviewing all the above testimony, it reveals a consistent and logical sequence of events during the early morning hours of February 27, 1961, and a finding of guilty predicated upon such evidence was proper.

█ We are well aware that Davis, Sims and Murphy were all narcotics addicts and in trouble with the police. But this does not require us to reject their testimony. People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282

(1964). The trial judge felt that the story they told was credible and, in light of the instant record, we do not disagree.

█ In reviewing the evidence, the trial judge commented that the defendant "knew something about what happened (but) when he took the stand, he didn't explain what he knew about it." Defendant argues that this was requiring him to prove his innocence. Upon reviewing the record we find several comments by the trial judge which clearly indicate that he was not relieving the State of its burden to prove defendant guilty beyond a reasonable doubt. The trial judge had this standard firmly in mind throughout the course of the trial and in view of this record the quoted comment was not improper.

█ The other two allegations of error relate to the admission into evidence of the statements of Sims to Florence Davis. It is clear that such statements were hearsay, but they were admissible in evidence as statements of a coconspirator. Both Sims and defendant participated in a plan to kill George Lemon. In furtherance of that plan, they returned to defendant's apartment, after leaving a restaurant with Lemon, and procured a gun. At that time Sims stated they were going out to kill Lemon. When Sims returned to the apartment some 3½ hours later, he said they had accomplished their purpose and were going out again to dispose of the gun.

█ Verbal expressions of one conspirator in furtherance of, accompanying, or explaining other acts of a plan or common design are admissible in evidence as an exception to the hearsay rule. People v. Pavluk, 386 Ill 492, 54 NE2d 567 (1944); Samples v. People, 121 Ill 547, 13 NE 536 (1887). The fact that conspiracy is not charged in the indictment does not change the rule. People v. Niemoth, 409 Ill 111, 98 NE2d 733 (1951), US certiorari denied 344 US 858 (1952). The two statements of Sims were clearly explanatory, first, of the fact that he and defendant were leaving the apartment with a gun

and second, their reasons for dismantling the gun, wrapping it up in a rag and going out again. We find no error in the admission of such statements into evidence.

Defendant relies on the case of People v. Tunstall, 17 Ill2d 160, 161 NE2d 300 (1959). The statements made in the Tunstall case were made to a police officer at the time of arrest. Thus, they do not fall within the exception to the hearsay rule which allows statements in furtherance of a conspiracy into evidence. Furthermore, in Tunstall, the error was committed when the jury was not instructed that the statements were being used only to effect the credibility of the witness who made the statements.

For the foregoing reasons, the judgment of the Circuit Court of Cook County, Criminal Division, is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.