THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLARD R. GRAHAM, Defendant-Appellant.

(No. 70-87;

Third District—October 15, 1971.

Theodore A. Gottfried, of Defender Project, of Ottawa, for appellant.

James N. DeWulf, State's Attorney, of Rock Island, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This cause was initiated by a two-count indictment against defendant Willard R. Graham and a Norman L. Sproston, charging them both with the crimes of Conspiracy and Attempted Burglary. Sproston pleaded guilty to the charge of Attempted Burglary and the Conspiracy charge against him was dismissed. He was sentenced to a term of one (1) to three (3) years. Defendant, however, proceeded to trial in the case. As a result of the trial, a jury returned verdicts of guilty on both counts and judgments were entered thereon. The prosecutor then elected, in response to a motion by defendant, to ask that the sentence be imposed on the Conspiracy count. Defendant was then sentenced to a term of not less than two (2) nor more than ten (10) years.

On appeal in this case, it is contended by the defendant that the State failed to prove the elements of Conspiracy or of Attempted Burglary. It is also contended that the sentence imposed for the crime of Conspiracy is contrary to the law.

From the record in the cause, it appears that at approximately 8:00 P.M. on November 24, 1969, defendant and the co-defendant left a tavern in Davenport, Iowa, where defendant had asked another man if defendant could borrow his automobile to go to Rock Island. He told the owner of the automobile that he would be back in 45 minutes. Defendant then transported himself, the co-defendant, defendant's wife and another man to Rock Island. Defendant's wife was dropped off at her home and the other man was dropped at a tavern. Defendant and co-defendant then proceeded in the automobile to Taylor Ridge. When they arrived at Taylor Ridge they rode back and forth several times on a road which was in front of the Oscar Mayer plant, and finally the co-defendant Sproston got out of the car and attempted to break into the building.

In the meantime, defendant continued to drive back and forth and finally drove to a nearby gas station (which was closed) and pulled into the driveway so that the vehicle was facing the Oscar Mayer plant next door. The headlights were then turned out and defendant waited at this place. While defendant was sitting in the vehicle for a period of two or three minutes, the owner of the station, who had been working on a vehicle inside, came out in response to a telephone call from a neighbor

who lived across the street. The neighbor had been observing the vehicle going back and forth in front of his home for approximately 15 minutes to a half an hour. The owner of the station asked the defendant what he wanted. He told the station owner that he had hit a curb with the front end of the vehicle and inquired if it could be fixed. (The owner of the car testified that there was nothing wrong with the automobile after the vehicle was returned to him). The station owner told defendant he could not fix it but to try the service station in the next town. The station owner himself had been watching the vehicle go back and forth, also, and he asked defendant about the friend he had dropped off in front of the Oscar Mayer plant. Defendant answered that he had not let anybody out, but then stated that it had only been a hitchhiker that he had let out of the car. The station owner got the license number of the vehicle as defendant drove off.

Thereafter, the station owner made an investigation at the Oscar Mayer plant next door which resulted in the apprehension by him of the co-defendant Sproston found hiding in the weeds. A tire iron was found in the same vicinity and several pry marks were also found on the rear door of the building.

As the station owner returned to the station with the co-defendant, he saw defendant's vehicle going past again. A neighbor across the street had called the sheriff and two sheriff's deputies had arrived at the station when defendant's car was observed driving past the station. When the deputies were informed that this was the same vehicle which had been going back and forth earlier and of which the station owner had taken the license number, the deputies stopped the car and brought defendant back to the service station. Defendant did not try to escape.

Defendant was asked if he knew the co-defendant who was sitting in the squad car just a few feet away. Defendant replied that he did not know him and had never seen him before. Sproston was in clear view at the time as the other automobile lights were shining into the car. Defendant looked into the squad car when he made his remark. At the trial, the co-defendant testified that he and defendant had known each other at least casually for ten years. The defendant and the co-defendant both testified that defendant knew nothing of Sproston's plan to burglarize the Oscar Mayer plant.

■■ The first issue for consideration is whether there was sufficient evidence before the court to establish the required elements of conspiracy and attempted burglary. Under the provisions of Ill. Rev. Stat., ch. 38, par. 8—2 (where elements of the crime of conspiracy are set forth) conspiracy is said to exist when a person, with intent that an offense be committed, agrees with another to the commission of that

offense. The Act also provides that no person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator. In summary, the requisite elements of the crime of conspiracy would, therefore, be an agreement to commit an offense with the intent that the offense be committed, followed by commission of an act in furtherance of the agreement by either conspirator.

■■ The courts in this State have recognized that while an illegal agreement is the gist of a conspiracy (*People v. Nathanson*, 389 Ill. 311, 59 N.E.2d 677), it is not necessary to prove the common design which is the essence of conspiracy by direct evidence of an agreement between the conspirators. It is only necessary to show that the alleged conspirators pursued a course tending toward accomplishment of the object of the conspiracy. *People v. Perry*, 23 Ill.2d 147, 177 N.E.2d 323, *certiorari* denied 82 S.Ct. 1035, 369 U.S. 868, 8 L.Ed.2d 86.

■■ It is recognized that since the very nature of the crime of conspiracy is clandestine there would be no witnesses to the agreement, and it has been determined that failure of proof of verbal or written communication is not fatal to a conviction, where the acts themselves, subsequent to the alleged conspiracy, inferentially establish the existence of an agreement. (*People v. Edwards*, 74 Ill.App.2d 225, 219 N.E.2d 382; *People v. Brinn*, 32 Ill.2d 232, 204 N.E.2d 724.) It is, therefore, the conduct of the parties which may determine whether or not the co-parties were in fact co-conspirators.

■■■ The issue then becomes whether or not there was sufficient evidence from which a jury in this cause could base its finding of guilty to the conspiracy charge. The fact that the defendant and the co-defendant testified that defendant knew nothing of the co-defendant's plans to burglarize the Oscar Mayer plant would not prevent a jury from determining that the testimony of the confessed burglar and the defendant could be disbelieved in light of the clear weight of all the other evidence presented to the jury. In this instance, the jury had the right to believe that the conduct of defendant and the co-defendant Sproston were such as to justify the finding of a conspiracy despite the denials of defendant and the co-defendant. We cannot say that the jury did not have sufficient evidence upon which to base a verdict of guilty of conspiracy as to defendant, in spite of the testimony of defendant and co-defendant as shown in the record. It is also notable that a person who enters into a conspiracy is deemed to be a party to all acts done by him or any of the other parties in furtherance of the common design. (*People v. Walensky*, 300 Ill. 92, 132 N.E. 757, 32 Ill.2d 308, 231 N.E.2d 416.) Since the co-defendant Sproston pleaded guilty to attempted burglary and there was

sufficient evidence to support the conspiracy conviction, defendant could be held responsible for the acts of the co-defendant in furtherance of the conspiracy.

■■ On the issue, however, of the sentence, the State confesses error and agrees that the maximum sentence which may be imposed for conspiracy to commit attempted burglary is five (5) years (Ill. Rev. Stat., ch. 38, par. 8—2(c)). On review of the record, therefore, we agree with appellant that the penalty imposed of not less than two (2) nor more than ten (10) years was improper. In view of the entire record and the sentence imposed on Sproston, we agree that the sentence imposed on defendant by the circuit court of Rock Island County was improper. There likewise appears to be no reason why the sentence imposed upon defendant in this cause should be any greater than that imposed on Norman L. Sproston. Accordingly, the sentence imposed upon defendant Willard R. Graham is vacated and modified in this court to a sentence of not less than one (1) nor more than three (3) years. The judgment of conviction of conspiracy as to defendant is affirmed.

Affirmed in part and sentence modified.

STOUDER and SCOTT, JJ., concur.