THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY HOOVER, Defendant-Appellant.

First District (4th Division) No. 60811

Opinion filed January 28, 1976.

Walter LaVon Pride, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Following a jury trial defendant was convicted along with codefendant Andrew Howard of murdering one William "Pooky" Young and was sentenced to a term of 150 to 200 years' imprisonment. On appeal defendant contends that the trial court erred when it:

> (1) Denied his motion for a severance based on admission of a post-arrest statement of the codefendant;
> (2) Admitted evidence concerning the death of one of the witnesses and that witness' testimony;
> (3) Restricted cross-examination of a witness;
> (4) Gave instructions regarding a conspiracy;
> (5) Admitted evidence of other crimes;
> (6) Allowed the State to make improper remarks during opening and closing arguments.

In addition, defendant asserts that he was not proven guilty beyond a reasonable doubt.

On February 26, 1973, at approximately 8 p.m., a witness heard a car stop in the alley behind his apartment. The car pulled away after three

or four shots were fired. This witness then saw a body lying in the alley and called the police. The victim, William Young, had been shot six times in the head and once in the arm.

The State's witness, Larry Leverston, testified that the killing of William Young had been ordered by defendant who with Leverston, defendant Hoover, and codefendant Andrew Howard had all been members of an organization known as "the Family," which sold narcotics in the Englewood area of Chicago. Defendant, known as "King Hoover," was the leader of "the Family." On or about February 21, 1973, the three were all present at a meeting of ten or eleven members of "the Family." During the meeting defendant ordered the execution of William Young, Joel Ford, Joshua Shaw, and Tony Tucker for sticking up one of his dope houses. At another meeting Leverston attended on February 26, 1973, defendant stated that "he had gotten one of the guys that they was [sic] after and he wanted the other two, Josh Shaw, Tony Tucker killed also before the week was out." Defendant further stated "they had gotten Pookey and threw him in the alley around 68th and Lowe and shot him in the head." On cross-examination Leverston admitted that he was currently charged with murder. The trial court, however, sustained the State's objections to defense questions on whether Leverston had been indicted, whether he was incarcerated on other charges, and whether he was promised favorable treatment for testifying for the State.

Certain evidence was introduced at trial which applied particularly to codefendant Howard. At Howard's preliminary hearing, before defendant had been arrested, Shaw's testimony placed Howard with Young on February 16, 1973. Howard had told a companion to shoot if Young tried to run. Further testimony revealed that Shaw had been shot to death on September 27, 1973. The transcript of Shaw's testimony at the preliminary hearing was thus read to the jury at the trial with certain references to defendant stricken. The court also instructed the jury not to consider Shaw's testimony against defendant.

Howard admitted after his arrest that at defendant's request he brought Young to the Roberts Motel on February 26, 1973, and then released him when Young said he did not want to see defendant. The court instructed the jury that "an admission may not be considered by you against any defendant other than the one who made it."

After the jury had been impanelled, defense counsel moved for a severance based on certain police reports he claimed he had received just before trial. The court denied the motion as untimely.

During the opening argument, the State referred to defendant as

the leader of a Chicago gang known as the "supreme gangsters." In his closing argument, he alluded to narcotic drug traffic, to defendant as the "King" of "the Family," and to orders by the defendant that certain persons including the victim must die.

Defendant was arrested on September 21, 1973, for a traffic violation. He attempted to escape, but was apprehended a short time later.

Defendant urges, as grounds for reversal, that the trial court erroneously denied his motion to sever. He claims that the conflict between his statement and Howard's statement as to whether Howard ever called him to inform him of Young's whereabouts denied him a fair hearing.

■■ While jointly indicted defendants are ordinarily tried together, the granting of a severance is left largely to the discretion of the trial court. (*People v. Ross* (1968), 41 Ill.2d 445, 244 N.E.2d 608.) A motion for a severance must be made before the jury is sworn. (*People v. Fox* (1925), 319 Ill. 606, 150 N.E. 347; *People v. Ramey* (1969), 115 Ill.App. 2d 431, 253 N.E.2d 688.) The primary inquiry is whether or not the defenses of the several defendants were so antagonistic that being tried together denied one of them a fair trial. (*People v. Connolly* (1965), 33 Ill.2d 128, 210 N.E.2d 523; *People v. Trigg* (1968), 97 Ill.App.2d 261, 240 N.E.2d 130.) Defendant must show how he would have been prejudiced by a joint trial. *People v. Rhodes* (1969), 41 Ill.2d 494, 244 N.E.2d 145; *People v. Howard*, 34 Ill.App.3d 145, 340 N.E.2d 53.

■■ The motion for severance in the instant case was based on the alleged contradiction between the post-arrest statements of defendant and codefendant Andrew Howard. The same counsel represented both defendant and Howard. Moreover, the supplemental police reports giving these statements were furnished to defendant before he answered ready for trial and a jury was chosen. Defendant, nonetheless, answered ready for trial and the court proceeded to impanel the jury. The following day, as the court prepared for opening statements, defendant orally moved for a severance based on police reports showing a contradiction between statements of defendant and Howard. We are of the opinion the trial court correctly denied defendant's motion for a severance as untimely.

■■ Defendant urges that it was error to allow the oral statement of Andrew Howard made to the police after his arrest to be considered as evidence of defendant's guilt. Statements made to a police officer at the time of arrest do not fall within the exception to the hearsay rule which allows statements in furtherance of a conspiracy into evidence. (*People v. Daniels* (1968), 92 Ill.App.2d 207, 235 N.E.2d 305; *People v. Tunstall* (1959), 17 Ill.2d 160, 161 N.E.2d 300.) Where defendants are tried jointly, however, evidence competent against one or more of them

is admissible when the trial judge limits the evidence to the particular party implicated by it. *People v. Sessions* (1968), 95 Ill.App.2d 17, 238 N.E.2d 94.

■■ In the case before us, Howard told the police that on February 26, 1973, he called defendant who told him to bring in the victim, William Young. According to Howard, Young objected and Howard permitted him to leave. Defendant in his post-arrest statement denied having seen Young or having talked to Howard that day. While Howard's statement may have exculpated Howard, it also may have implicated defendant. The trial court, therefore, instructed the jury not to consider the statement against any defendant other than the one who made it. The State, moreover, did not need Howard's statement to bring defendant's intentions into evidence. Larry Leverston testified as to his presence at two meetings. At the first defendant announced his intent to execute William Young. At the second defendant announced they shot the victim and threw him in an alley. The jury could find sufficient evidence to find defendant guilty beyond a reasonable doubt without reference to Howard's statement. Howard's statement may or may not have implicated defendant. Leverston's testimony certainly implicated defendant. We find the trial court to have, at most, committed harmless error in admitting the statement of Andrew Howard into evidence.

■■■ Defendant next contends that the trial court erred when it admitted the testimony of Joshua Shaw and evidence regarding the death of Joshua Shaw. In *People v. Howard*, 34 Ill.App.3d 145, 340 N.E.2d 53, we held the transcript to have properly been admitted against codefendant Howard. When a witness testifies under oath in a prior proceeding and is cross-examined, that testimony may later be introduced against two parties to the prior proceeding if the witness becomes unavailable. (*People v. Jackson* .(1968), 41 Ill.2d 102, 242 N.E.2d 160.) Defendant in the case at bar had not yet been arrested at Howard's preliminary hearing. Both defendant and Howard, however, were represented by the same counsel who represented Howard at the preliminary hearing. Shaw's testimony placed Howard with the victim on February 16, 1973. Howard had told a companion to shoot if Young tried to run. Further testimony revealed that Shaw had been shot to death on September 27, 1973. The transcript of Shaw's testimony at the preliminary hearing was thus read to the jury at trial with certain references to defendant stricken. The court also instructed the jury not to consider Shaw's testimony against defendant. Defendant, furthermore, had notice of the transcript of Joshua Shaw's testimony and yet made no motion for severance based on that transcript. In light of the jury instruction and the fact that defendant did not move for severance based on the transcript,

we believe the trial court did not commit reversible error in admitting Shaw's statement. Defendant was in jail at the time of Shaw's death. Counsel, nonetheless, can prove a man's death without describing and detailing the method of his demise. We hold it was harmless error to detail the death of Joshua Shaw.

■■ Defendant further contends that the trial court improperly restricted defendant's cross-examination of Leverston. The court refused to allow defense counsel to inquire whether Leverston had been indicted on a murder charge or how many times the murder charge had been up before the court. The general principle concerning impeachment of witnesses by evidence of past crimes applies only to convictions. (*People v. Hanks* (1974), 17 Ill.App.3d 633, 307 N.E.2d 638.) We rely on our opinion in *People v. Howard* (1975), 34 Ill.App.3d 145, 340 N.E.2d 53, in holding that all matters affecting Leverston's credibility were properly before the jury.

■■ Defendant argues that instructions regarding a conspiracy should not have been given where the evidence did not establish conspiracy. Although the trial court gave no conspiracy instruction to the jury, the court determined that a conspiracy existed in its rulings on the admissibility of certain evidence. The elements of the crime of conspiracy are "an agreement to commit an offense with the intent that the offense be committed, followed by commission of an act in furtherance of the agreement by either conspirator." (*People v. Graham* (1971), 1 Ill.App.3d 749, 752, 274 N.E.2d 370, 372.) When the evidence at trial, taken as a whole, shows a conspiracy, statements of one conspirator accompanying or explaining the common design are admissible against all coconspirators. *People v. Daniels* (1968), 92 Ill.App.2d 207, 235 N.E.2d 305; *People v. Grilec* (1954), 2 Ill.2d 538, 119 N.E.2d 232.

■■ The evidence in the instant case revealed that defendant led an organization known as "the Family." Leverston testified that he and Howard were present at a meeting when defendant ordered the killing of William Young. At a meeting approximately an hour and a half after William Young had been killed, defendant described how he and Howard had accomplished the killing. Howard then took Leverston into a bathroom and told how he had taken Young to defendant. They held Young for a few hours, took him to an alley, and shot him. We hold that the statements of Howard, a coconspirator, were properly admitted against defendant.

■■ Defendant maintains that the trial court erred in allowing evidence of other crimes by the defendant. He contends the testimony concerning narcotics sales was brought forth to prejudice and inflame the passions of the jury. Our supreme court, however, has allowed evi-

dence of a defendant's narcotics sales to show motive. (*People v. Durso* (1968), 40 Ill.2d 242, 239 N.E.2d 842.) Defendant in the case before us was the head of an organization involved in narcotics sales. The victim was a seller for defendant and was believed by defendant to have stolen from defendant's supply. We conclude that the testimony concerning defendant's involvement in narcotics sales was properly admitted to show defendant's motive for killing William Young.

■■ Defendant asserts that he was prejudiced by improper remarks made by the prosecution during opening and closing arguments. The State's closing argument referred to sales of narcotics by defendant and his associates. We rely on *People v. Howard*, 34 Ill.App.3d 145, 340 N.E.2d 53, and conclude that defendant's assertion cannot be upheld.

■■ Defendant claims not to have been proved guilty beyond a reasonable doubt. We held in *People v. Howard*, 34 Ill.App.3d 145, 340 N.E.2d 53, that it was the function of the jury to judge the credibility of the witnesses, weigh their testimony, and determine factual matters. (*People v. Robinson* (1972), 3 Ill.App.3d 858, 279 N.E.2d 515.) Furthermore, the testimony of a single witness may be sufficient to convict even if contradicted by the accused. (*People v. Arroyo* (1974), 18 Ill.App.3d 187, 309 N.E.2d 804; *People v. Daily* (1968), 41 Ill.2d 116, 242 N.E.2d 170.) The State in the case at bar relied heavily on the testimony of Larry Leverston. The court instructed the jury regarding evidence admissible only against codefendant Howard. This court holds that the defendant was proved guilty beyond a reasonable doubt.

■■ Defendant finally contends that the court erred in denying his motion for a mistrial. The granting of a mistrial is a matter within the sound discretion of the trial court. (*People v. Oliver* (1970), 129 Ill.App.2d 83, 262 N.E.2d 597.) Our previous analysis treated defendant's contentions in support of a motion for a mistrial. We do not find the trial judge to have abused his discretion.

For the foregoing reasons, this court concludes that the judgment of the Circuit Court of Cook County must be affirmed.

Judgment affirmed.

DIERINGER and BURMAN, JJ., concur.