THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH MORROW, Defendant-Appellant.

First District (1st Division)   No. 61739

Opinion filed August 2, 1976.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin and Robert B. Thompson, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Defendant, Kenneth Morrow (referred to in this opinion as Kenneth), was indicted along with Leslie Morrow, his brother (referred to in this opinion as Leslie), Michael Crump, Stephen Meredith and Charles Bailey, for the offense of armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, §18—2). After a joint jury trial, Kenneth and his codefendants Crump, Meredith and Bailey were found guilty. Leslie was also found guilty after a jointly conducted bench trial. Kenneth was sentenced to a term of 4 to 8 years, and he appeals.

Alfred King and his common-law spouse, Patricia Bell, returned to their apartment at 1741 West 80th Street in Chicago at approximately 12:30 a.m. on September 11, 1973. A short time later, Crump, an acquaintance of King, arrived at the apartment. Crump testified that while there he snorted heroin with King. King's testimony was that around 6 or 7 p.m. the previous evening he had snorted heroin, but did not use any narcotic between that time and the robbery which occurred following Crump's arrival.

After Crump had been in his apartment a short while, King escorted him to the front door and opened it. As they stepped into the hallway, two men jumped off the stairway and pointed a revolver and a shotgun at them. At trial, King identified the men as codefendants Meredith and Bailey. The assailants put a pillowcase over King's head, pushed him back into the apartment and knocked him to the floor. Crump testified something was also put over his head, and he was forced to lie down on the floor.

Bell testified that she was in the kitchen when the men entered the apartment. One of the assailants accosted her with a gun, pulled the turban she had been wearing over her face, and ordered her to go into the dining room, take off her clothes and lie on the floor. She complied with these commands. Two rings were taken from her hands. She stated she was in a position to see the two men enter the apartment, but was unable to identify either of them, and that Crump was the only defendant she saw in her apartment.

During the course of the robbery, while he was on the floor with his eyes covered by a pillowcase, King was questioned about the location of various items in the apartment. King's testimony was that he recognized the voice of the person who questioned him as that of Leslie because Leslie stutters. He had known Leslie for 14 or 15 years and in the previous 10 years saw him approximately weekly.

King also testified that after Leslie questioned him about the location of various articles and while the robbery was progressing he heard Leslie call out, "Come here Kenneth," and a voice, which he recognized as that

of Kenneth, responded, "Shuh, be quiet." He had known Kenneth as long as he knew Leslie and saw him frequently. King conceded that at the preliminary hearing, held the day after the robbery, he testified he had not heard Kenneth's voice.

The robbers ransacked King's apartment, taking several valuable items including rings, wristwatches, cameras, a jar containing coins, a fur jacket, three guns, a clock a camera case and a tape recorder.

Crump testified that after about 20 minutes the two men who originally entered the apartment put tape on his eyes, took him outside, put him in an automobile and drove away with him. One of the assailants was in the front seat and the other was in the back seat with Crump, sitting to Crump's left. When the automobile stopped he opened the right rear door, ripped the tape off his eyes and jumped out. The automobile with the two men in it then took off. Crump found himself on South Loomis and he ran north on Loomis for about a block which brought him to 90th or 89th. He continued running west on 90th or 89th for two blocks and then turned north, still running, for about a half a block. Crump then walked to the apartment of Helen Morrow, the sister of Kenneth and Leslie, which was on 80th Street near Ashland. Crump testified he ran half of the way from 91st and Loomis to Helen Morrow's apartment and it took him 1 hour to 1½ hours to reach there. Entering the apartment through the front door, he walked through the living room and dining room and into a bedroom where he found Kenneth and Leslie. Then in about a minute the police came in. Just before the police arrived, Crump saw the codefendants Bailey and Meredity with their clothes on sitting on the couch in the apartment.

Chicago Police Officer Joseph Gorman testified that in response to a radio call he and his partner went to King's apartment where he had a conversation with King. They then proceeded to an apartment building at 1548 West 85th Street, a few blocks from King's apartment, where Helen Morrow lived, and where they were joined by Chicago Police Officer John Molloy and his partner. Officer Gorman noticed a light in the third-floor apartment; they entered the vestibule of the apartment building and rang the doorbell with the name Morrow on it, but received no answer. They went to the rear of the building and saw the light in the third floor apartment go off. They walked up to the third floor and knocked on the door. Officer Gorman pointed his flashlight into the apartment and saw two cameras, a camera case and a jar containing coins on the kitchen table. He knocked on the door some more, and after about 10 minutes Helen Morrow came to the rear door and admitted the police officers. Officer Gorman found codefendants Meredith and Bailey lying on a bed fully clothed trying to kick their shoes off. Officer Molloy entered a bedroom and found Kenneth, Leslie and Crump clothed and with their

shoes on. Two of them were lying in beds and the third was lying on the floor.

The officers discovered the items taken from King in Helen Morrow's apartment as well as other firearms. King identified the items which had been taken from his apartment.

The issues raised by this appeal are: was defendant's motion for a severance properly denied; was the victim's testimony attributing a statement to defendant's brother, Leslie, while the victim was blindfolded inadmissible and prejudicial hearsay as to Kenneth; was defendant's guilt established beyond a reasonable doubt; was it error to receive in evidence weapons recovered in the apartment where the defendants were arrested which were not taken from the victim or connected by any evidence to the robbery; was the response of the deputy sheriff in charge of the jurors to a request from the jury for a transcript of a witness' testimony reversible error?

■■ Where several persons are jointly indicted the general rule is that they should be tried together. The decision as to whether separate trials should be granted is a matter for the trial court's discretion and should not be reversed in the absence of an abuse of discretion. *(People v. Canaday* (1971), 49 Ill. 2d 416, 425, 275 N.E.2d 356. See also *People v. Brown* (1975), 27 Ill. App. 3d 569, 574-76, 327 N.E.2d 51, and cases therein cited.) The resolution of a motion for severance turns on whether the defenses are of such an antagonistic nature that defendants cannot receive a fair trial when tried together. *People v. Gendron* (1968), 41 Ill. 2d 351, 356, 243 N.E.2d 208.

The defenses offered by the respective defendants were entirely compatible. The only codefendant who testified was Crump and he did not implicate Kenneth or any other defendant. All of the defendants pleaded not guilty, and their defense was that they did not participate in the robbery, and, with the exception of Crump, were not at the scene of the robbery.

■■ Kenneth was not prejudiced by being tried with his brother. Had Kenneth been tried separately, King's testimony that he heard Leslie say, "Come here Kenneth," would have been admissible to prove Kenneth was present under the recognized exception to the hearsay rule discussed below. Thus, the denial of a severance did not prejudice Kenneth and was not an abuse of discretion.

■■ Nor did the court err in allowing King to testify over objection that he heard defendant Leslie Morrow say, "Come here Kenneth." The testimony was not hearsay when offered to prove Leslie was in the apartment or the number of participants in the robbery. It was hearsay when offered to prove that Kenneth was present because he was unable to cross-examine Leslie concerning the identity of the person to whom Leslie

was referring. Nevertheless, it was admissible under the exception to the hearsay rule which when a conspiracy is established permits the declarations of each member of the conspiracy in furtherance of the common design to be admitted against all. *(People v. Hall* (1967), 38 Ill. 2d 308, 231 N.E.2d 416; *People v. Niemoth* (1951), 409 Ill. 111, 118, 98 N.E.2d 733; *People v. Stewart* (1974), 24 Ill. App. 3d 605, 614, 321 N.E.2d 450; *People v. Daniels* (1968), 92 Ill. App. 2d 207, 213, 235 N.E.2d 305; *see also* Fed. R. Evid. 801(d)(2) E.) The application of the exception does not require that the defendants be charged with a conspiracy. *People v. Niemoth* (1951), 409 Ill. 111, 118, 98 N.E.2d 733; *People v. Daniels* (1968), 92 Ill. App. 2d 207, 213, 235 N.E.2d 305; McCormick, Evidence §267, at 646 (2d ed. 1972).

■■ The exception requires independent proof of the conspiracy's existence, which was the robbery itself, participated in by more than two persons. It requires proof that the declarant and the defendant were connected with the conspiracy; this was established by the victim's testimony that he recognized the voices of Leslie when he asked the location of various items and of Kenneth when in response to Leslie's request Kenneth said, "Shuh, be quiet," as well as by their presence in their sister's apartment under a combination of the following unusual circumstances: the two persons King personally observed and identified (Meredith and Bailey) were also there in the early morning hours a short time after the robbery; Crump who claimed to be a victim of the robbery was there at the same time; there was no response at the front door when the police rang the bell, but instead a light they observed in the apartment was turned off; the police were admitted through the rear door only after repeated knocking and after shining a flashlight into the kitchen area; codefendants Meredith and Bailey were discovered by Officer Gorman lying on a bed in the apartment fully dressed and trying to kick their shoes off; defendant, his brother Leslie and Crump were discovered by Officer Molloy fully clothed in a bedroom in the apartment, two of them lying in beds and one lying on the floor. In addition, the items taken during the robbery were found in the apartment. The request of Leslie, in defendant Kenneth's presence, calling for assistance by asking someone to "come here" while the robbery was in progress was a statement made in furtherance of the common design, and fits the exception to the hearsay rule even with the name "Kenneth" added to the request as testified to by King.

We also note that the prosecutor's closing argument to the jury that Leslie must have been referring to his brother, Kenneth, is supported by King's testimony that he recognized Kenneth's voice responding with the words, "Shuh, be quiet." Neither *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, nor *People v. Wheeler* (1970), 121 Ill.

App. 2d 337, 257 N.E.2d 587, is relevant; they both involved statements made by a defendant after the crime which inculpated a codefendant.

■■ ■ Kenneth's guilt beyond a reasonable doubt is sufficiently established by King's testimony that he recognized defendant's voice together with the difficulty the police experienced in trying to gain entry to Helen Morrow's apartment, the circumstances they found in the apartment a short time after the robbery, and the recovery of the stolen property in the apartment. King's credibility in view of his testimony the next day at the preliminary hearing that he did not hear defendant's voice and that he had last sniffed heroin approximately 7 hours before the robbery was a matter for the jury to decide. The evidence casting doubt on King's credibility was fully presented to the jury.

Eight guns were received in evidence. All of them were recovered by the police in Helen Morrow's apartment. Defendant concedes that five of the weapons were properly admitted; three of these were the guns King identified as having been taken from his apartment and one was a sawed-off shotgun identified by King as one used in the robbery. Two .38-caliber handguns were also introduced in evidence. King testified that one of the robbers had a pistol, but did not identify either of the handguns as the one used in the robbery. Kenneth contends one of the handguns could have been received, but not both. The two additional weapons received in evidence were shotguns.

■■ King was unable to identify the pistol used in the robbery, and it was not error to admit the two handguns as they both fit the description King gave of the weapon the robbers used in gaining entry. Inasmuch as King did identify the sawed-off shotgun which was used, there was no reason for admitting the two other shotguns not used in the robbery. However, in view of the other evidence and because six guns were properly before the jury, the admission of two additional weapons was harmless error.

The final ground on which Kenneth relies for reversal relates to a request by the jury during its deliberations for the transcript of Patricia Bell's testimony. The request was made to the deputy sheriff in charge of the jury while the judge and counsel were away from the courtroom. Immediately after the jury returned its verdicts finding all defendants guilty and was polled, but before it was dismissed, counsel for one of the defendants informed the court his client had told him while counsel was away from the courtroom the jury had "asked certain questions." Upon questioning of the deputy sheriff and the jury foreman, it appeared that the foreman rang a buzzer for the deputy sheriff and asked the deputy for the transcript. According to the deputy, she responded that the jury already had everything she could give them. According to the foreman, her response was that the jury already had what they were supposed to

have. Neither the foreman nor any member of the jury asked that the request be transmitted to the judge. At the time of the request the jury had agreed upon the guilt of all of defendants except Kenneth.

The jurors neither raised the question of whether the transcript could be made available to them with the trial judge nor asked the deputy sheriff to transmit their inquiry to the judge. Never having received a request for the transcript, the court could neither have exercised nor abused its discretion, and the holdings in *People v. Queen* (1974), 56 Ill. 2d 560, 565-6, 310 N.E.2d 166, and in *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577, which Kenneth cites in support of his argument, are not relevant.

When the law relies on jurors to resolve factual controversies affecting guilt or innocence, it must also regard them as endowed with enough common sense to have asked the deputy sheriff to transmit their request to the judge, if upon further reflection after receiving the deputy's answer they felt the transcript was essential in reaching their decision. The failure to pursue the request leads to the conclusion that the jury determined it could reach a decision without the transcript. The only juror defense counsel asked to question was the foreman, and his answers did not disclose that the jurors felt there was a need for the transcript after their conversation with the deputy sheriff.

■■ If there was any error in the trial as a result of the deputy sheriff's response, it was harmless. Bell's testimony was neutral. She was unable to identify Kenneth or any of his codefendants as one of her assailants or as participants in the robbery. At the same time, nothing in her testimony served to exculpate any of them. She was blindfolded during most of the time the robbery was in progress and did not testify she was familiar with the voices of Kenneth or Leslie or that she even knew them. Bell's testimony was not material to the issue of Kenneth's guilt or innocence. Although it would have been wiser for the deputy sheriff to have advised the court of the request before it received the verdicts, her conduct was not so prejudicial to Kenneth as to require reversal of his conviction.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.